

OFFICE OF THE DEAN OF STUDENTS

December 21, 2018

Sent electronically to ▓▓▓▓▓@purdue.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2018015102

Please see attached letter.

Katherine L. Sermersheim, Ph.D.
Associate Vice Provost and Dean of Students

CC:   Christie Wright, Senior Associate Director, Office of Institutional Equity
      Jeffrey Rooze, Investigator, Office of Institutional Equity
      Jeffery Stefancic, Associate Dean of Students, Student Rights and Responsibilities
      Lee Morrision, Assoiciate Director, University Residences
      Panel Members

Schleman Hall of Student Services, Room 207 ■ 475 Stadium Mall Drive ■ West Lafayette, IN 47907-2050
(765) 494-1747 ■ TTY: (765) 494-1239 ■ Fax: (765) 496-1550 ■ URL: www.purdue.edu/odos

Exhibit 17, p.1



OFFICE OF THE DEAN OF STUDENTS

**PERSONAL AND CONFIDENTIAL**

Via Electronic Mail on December 21, 2018
Mr. ▮

Re: Final Determination

Dear ▮

In correspondence dated August 28, 2018, I advised you that pursuant to Purdue University's Procedures for Resolving Complaints of Discrimination and Harassment (Revised July 1, 2018), (the "Procedures"), I appointed Christina Wright, Senior Associate Director, Office of Institutional Equity, and Jeff Rooze, Compliance Program Specialist Investigator, Office of the Vice President for Ethics and Compliance, as the University Co-Investigators in this University-Initiated investigation regarding allegations of your conduct toward ▮ that, if substantiated, might constitute harassment, specifically Sexual Harassment and/or Sexual Exploitation, in violation of the University's Anti-Harassment Policy (III.C.1).

Specifically, it was alleged that:

> Our office has been informed of conduct by you ▮ that, if substantiated, may constitute a violation of the University policy on Anti-Harassment (III.C.1). Specifically, the allegations, if substantiated, may constitute Harassment and/or Sexual Violence as defined in the Anti-Harassment Policy.
>
> It is alleged that, on the evening of August 16, 2018, you met up with Ms. ▮ at a party ("Party 1") at a house occupied by members of the Purdue Men's Swimming & Diving Team, of which you are also a member. After staying at that party for approximately 30 minutes, you and ▮ walked with friends to another party ("Party 2"). While at both parties, you and ▮ were drinking alcohol.
>
> It is alleged that, at Party 2, you became aggressive and possessive with ▮ including grabbing her by the waist and pulling her back to you when she tried to walk away from you. It is alleged that, in an effort to "make out" with ▮ you pushed her into a windowsill, causing a gash on her leg. It is further alleged that you kept trying to pull up ▮ shirt during the party while other people were present and that ▮ had to keep pulling her shirt back down. Additionally, it is alleged while you were both in the kitchen of the house and after you sat her down in a recliner, you penetrated her vagina with your finger(s) without her consent.
>
> It is further alleged that you and your male friend walked ▮ and her roommate back to their residence hall room at Meredith Hall. When ▮ roommate escorted your male friend to the bathroom, you sexually assaulted Ms.

Schleman Hall of Student Services, Room 207 ■ 475 Stadium Mall Drive ■ West Lafayette, IN 47907-2050
(765) 494-1747 ■ Fax: (765) 496-1550 ■ URL: www.purdue.edu/odos

Exhibit 17, p.2

by forcing her to perform oral sex on you, inserting your finger(s) into her vagina, inserting your finger(s) into her anus, and attempting to insert your penis into her vagina, all without her consent.

It is further alleged that during this incident, you bit ▮▮▮ on her breasts and neck without her consent, causing injury to ▮▮▮. It is further alleged that you may have strangled ▮▮▮ causing bruising on her neck and throat.

Finally, it is alleged that, at some point during this incident, you locked the door to the residence hall room so that ▮▮▮ roommate could not enter and that you did this without ▮▮▮ knowledge or consent.

Pursuant to the Procedures, on Friday, December 21, 2018, I convened a panel of three members from the Advisory Committee on Equity (the "Panel"). After considering information provided by you, ▮▮▮ the University Co-Investigators, and consulting with the three-person panel from the Advisory Committee on Equity, **I have made the determination that a preponderance of the evidence <u>does support a finding</u> that your conduct violated the Anti-Harassment Policy.**

I find the following by a preponderance of the evidence:

*Credibility*

I find that ▮▮▮ is more credible than you. This matter was reported to the Office of Institutional Equity by an RA. ▮▮▮ had contacted the RA at the urging of her friends as a resource to help her deal with the incident with you. ▮▮▮ and her friends did not realize that the RA was a mandatory reporter who would be required to report the incident to OIE. Consistent with their practice, OIE reached out to ▮▮▮ to inform her of her options regarding an investigation and to connect her with resources and assistance on campus. In the initial contacts, while she was considering her options, ▮▮▮ did not provide OIE with your name. However, OIE was able to independently identify you using your card swipe information in combination with photographs from University Residences and information concerning timing of your entrance to Third Street Suites and visit to Meredith Hall. Additionally, ▮▮▮ friends corroborated her account. While ▮▮▮ immediately shared with her friends what had occurred, they were also able to provide accounts of their observations and interactions with you immediately following the incident.

I have significant concerns about your credibility. The Investigators found that you contacted many of your teammates who were identified as witnesses before they were interviewed by the Investigators. They reported that you asked what they remembered from that night, what they would tell the Investigators, and that you shared your version of what had happened with ▮▮▮. Your conversations with these witnesses has the potential to influence the information that they provided to the Investigators. Further, your description of ▮▮▮ when the door to her room was opened is at odds with those of her friends who saw her at that point and in the immediate aftermath of the incident.

I am particularly concerned about your denial that you bit ▮▮▮ and your statement that you had no indication that you had left bruises and bite marks on her. ▮▮▮ friends who saw her immediately after the incident stated that the bruises on her neck were visible at that point. One witness stated that she was "taken aback" because she had never seen anything like the bruising. The witnesses described their efforts to keep ▮▮▮ from looking in the mirror in an effort to protect her. Some of her friends described waiting while she showered and then seeing the bruising

**Exhibit 17, p.3**

extended to her chest.  Significantly, several of the witnesses confirmed that they had seen ▓▓ ▓▓ earlier that night, and she did not have the bruises on her neck then.  Two of her friends persuaded ▓▓ to have photos with time stamps taken of the bruising and bite marks on her neck and chest in case she needed the documentation at a later point.  The friend who took the photos described purple bruises and bite marks on those areas.  The friend photographed the bite/teeth marks on both of ▓▓ breasts and under one of her breasts.

Finally, I am troubled about a story that you and Mr. ▓▓ attribute to ▓▓  You told the Investigators that on the walk from a party to Third Street Suites, ▓▓ told you, Mr. ▓▓ and Ms. ▓▓ that earlier that week and during Boiler Gold Rush, she was at a fraternity party.  A few men followed her into a bathroom and one of the men forced to perform oral sex.  While recounting this event, you claimed that ▓▓ was "lighthearted" and did not seem "distressed."  Mr. ▓▓ story has the same theme of a previous sexual assault in a bathroom with different details.  He said that she had shared that while she was "super drunk" at a party, she went into a bathroom where a black male raped her.  ▓▓ flatly denies that she said anything of the sort.  She stated that the parties she attended with you were the only parties she attended during BGR.  ▓▓ ▓▓ also denied a previous sexual assault.  Ms. ▓▓ also denied that this conversation occurred.  Further, she stated that if ▓▓ had been sexually assaulted as you and Mr. ▓▓ described, she thought ▓▓ would have shared that with her.

*Incapacitation*

Although both you and ▓▓ consumed alcohol on the night of the incident, ▓▓ does not assert that she was Incapacitated by alcohol, drug use, sleep or unconsciousness.  There is no preponderance of the evidence that ▓▓ was Incapacitated.

*Consent*

The Anti-Harassment Policy defines the terms "Consent/Consensual" in relevant part as follows:

> Affirmative, clear communication given by words or actions that shows an active, knowing and voluntary agreement to engage in mutually agreed-upon sexual activity.  Consent is given freely and voluntarily. Consent may not be inferred from silence, passivity or when an individual is Incapacitated or otherwise prevented from giving Consent as a result of impairment due to a mental or physical condition or age. No Consent exists when there is a threat of force or physical or psychological violence.
>
> Although Consent may be given initially, it may be withdrawn at any point without regard to activity preceding the withdrawal of Consent.

<u>Kitchen at Party 2</u>

▓▓ stated that she stopped dancing and went into the kitchen and that you followed her.  She told the Investigators that you sat her in a recliner and that the two of you began kissing while you were leaning over.  She said that kissing you was ok, but you then unbuttoned and unzipped her shorts.  You then pulled them down far enough to slide your hand inside her panties and digitally penetrate her in an "aggressive" manner.  She said that she tried to push you away in a subtle manner that would not cause a scene because there were other people in the kitchen.

During your interview, you provided the Investigators with two different versions of what happened in the kitchen at the second party. In both versions, you admitted that you digitally penetrated ▮ ▮ vagina. In neither version did you admit to leaning over her. In one version, you stated that you sat in the recliner while ▮ straddled you. You stated while you were kissing that you moved your hands to her pelvis and inner thighs. You stated that you then moved your hand back and forth over her vaginal area over her shorts. You stated that she began moving her body with your hand and moved in a manner that allowed you to put your hand down her shorts and panties. You then stated that you inserted your finger into her vagina, and she seemed to enjoy it. You said that the two of you were kissing and she was moving her hips. Later in your interview, you stated that at first you sat in the recliner and ▮ straddled you but that was uncomfortable so you switched positions. In this account, you stated that you knelt on the floor in front of ▮ while she sat in the recliner. You then described how she slid forward in the chair. Then you described how you reached your hand up and over the waistband of her shorts and then downward under her panties and then inserted your finger in her vagina.

You told the Investigators that you were hot so you stopped kissing and went outside.

Given that you shared two versions of what occurred between you and ▮ in the kitchen, and my overall concerns with your lack of credibility, I find by a preponderance of the evidence that ▮ did not Consent to your action of digitally penetrating her vagina. I believe that ▮ version of the events is more accurate than either of yours. You are significantly larger and likely stronger than ▮ While she was sitting in the recliner, you leaned over and essentially trapped her in the chair and then digitally penetrated her vagina.

I find by a preponderance of the evidence that your actions described above constitute Sexual Harassment and meet the definition of Sexual Violence under the Anti-Harassment policy: non-Consensual sexual intercourse: vaginal penetration to any degree and with any body part or object.

<u>Sexual Activity in ▮ Room</u>

▮ told Ms. ▮ that she wanted to leave Party 2. Mr. ▮ wanted to walk Ms. ▮ and ▮ back to their residence hall, Meredith Hall. You ended up leaving the party with them. Although ▮ had been uncomfortable with you at Party 2, she explained that you were calmer and were no longer being aggressive, so she did not object to you walking with them. On the way, the group stopped at Third Street Suites for a few minutes so that you could show them your room. The four of you then continued to Meredith Hall.

▮ and Ms. ▮ offered to show you and Mr. ▮ their room. Once the four of you arrived, Mr. ▮ stated that he needed to use the restroom. Ms. ▮ escorted Mr. ▮ down to the first floor to the restroom. That left you alone in the room with ▮. She recounted that you closed the door and started kissing her. She told you that she was ok with kissing you but that kissing was all she wanted to do. She reported that you then pushed her up against the futon in her room, removed all of your clothes, and her shirt and bra. You then penetrated her vagina with your fingers in such an aggressive manner that you caused ▮ pain. She stated that she told you to "stop" and that you then asked her to perform oral sex. She stated that she initially agreed and started to perform oral sex on you. She then stopped and told you that she did not want to continue performing oral sex on you. ▮ stated that you then grabbed her by her hair and forced her to perform oral sex on you. ▮ stated that she could not breathe and pushed herself away from you.

**Exhibit 17, p.5**

▇▇▇ reported that you then digitally penetrated her vagina while she told you no and tried to move away from you. She reported that you then tried to insert your penis into her vagina. She reported that she cupped her hand over her vagina to prevent you from inserting your penis into her vagina. She told the Investigators that you then told her you would not insert your penis into her vagina and that you would stop. She said that she then moved her hand away from her vagina and you again penetrated her digitally in an aggressive manner. She stated that she told you to stop and tried to move away from you. She said that you then inserted one finger in her anus while you had another finger in her vagina. ▇▇▇ stated that this was very painful and that she did not consent to the digital penetration of her vagina or anus.

She reported that she tried to move away from you and that you then began trying to insert your penis into her vagina again. She again cupped her hand over her vagina. She stated that you again digitally penetrated her. She shared with the Investigators that at this point she remembered wondering where Ms. ▇▇▇ and Mr. ▇▇▇ would come back to the room.

▇▇▇ also told the Investigators that she remembered you sucking on her breasts and neck which was very painful. ▇▇▇ also recounted that you bit her on her breasts and neck. She stated that she did not remember if you strangled her but does recall struggling to breathe.

▇▇▇ explained that at some point – without her knowledge – you locked the door to her room. She noted that the door could only be locked from the inside by turning the lock or outside with a key. ▇▇▇ also shared that Ms. ▇▇▇ key to the room was inside the room.

Your version of events in ▇▇▇ room is markedly different. Significantly, you stated that you began by telling her that she did not have to do anything she did not want to do. You told the Investigators that ▇▇▇ had been performing oral sex on you for a minute or two when you saw Mr. ▇▇▇ open the door. Mr. ▇▇▇ then shut the door, and you locked. You stated that you told ▇▇▇ that you should lock the door and that she agreed. You then described penetrating ▇▇▇ digitally while you were kissing. You reported that ▇▇▇ asked if you had a condom. You reported that because you did not have a condom, you agreed that you should not have sexual intercourse. You asserted that while you digitally penetrated her, ▇▇▇ appeared to orgasm. Then, you described that ▇▇▇ performed oral sex on you again but she stopped and she was done. You told the Investigators that you said "okay" and that you did not ejaculate.

You denied forcing ▇▇▇ to perform oral sex, denied inserting and trying to insert your penis into her vagina, denied inserting and trying to insert your finger(s) or penis into her anus. You denied that ▇▇▇ ever told you "no" or "stop." You told the Investigators that everything was consensual. You also denied that you bit ▇▇▇ When the Investigators showed you the photographs that ▇▇▇ friends took of her neck and chest that night, you stated the marks were from hickeys not from biting.

▇▇▇ explained that convinced you to allow her to send a text to Ms. ▇▇▇ to make sure she was okay. She asked Ms. ▇▇▇ to please come to their room. Ms. ▇▇▇ friends recounted that she was on the verge of tears when they got to her room and the door opened. As noted in the section regarding Credibility, the bruises on ▇▇▇ neck were already visible. ▇▇▇ left the room and went to a friend's room. She *immediately* told her friends what had happened.

I find by a preponderance of the evidence that ▇▇▇ consented to kissing you when you first got to her room. I find by a preponderance of the evidence that you digitally penetrated ▇▇▇ vagina and that at no point did ▇▇▇ Consent to you digitally penetrating her vagina. I find by

**Exhibit 17, p.6**

a preponderance of the evidence that ▮ initially consented to performing oral sex but that she withdrew consent. I find by a preponderance of the evidence that you forced ▮ to perform oral sex on you. I find by a preponderance of the evidence that you digitally penetrated ▮ anus without her Consent. I find by a preponderance of the evidence that you tried to insert your penis into ▮ vagina without her consent. I also find by a preponderance of the evidence that you bit ▮ neck and breasts and that by sucking on her neck and chest you caused bruising on ▮ neck and chest. There is no preponderance of the evidence that you strangled ▮.

In reaching my determination, I rely on my assessment of ▮ credibility and my serious concerns regarding your credibility as set forth earlier in this letter.

I find by a preponderance your conduct as set forth above, constitutes Sexual Harassment and Sexual Violence as those terms are defined by the University's policy on Anti-Harassment. Specifically, I find that your actions are (1) Non-Consensual sexual contact: touching, with any body part or object, another person's intimate parts (e.g., genitalia, groin, breast, buttocks), whether clothed or unclothed, and (2) Non-Consensual sexual intercourse: oral, anal, and/or vaginal penetration, to any degree and with any body part or object.

Purdue University does not condone and will not tolerate harassment of any person in the workplace or educational environment and will take appropriate steps to sanction such misconduct and to prevent such incidents from recurring. Accordingly, and pursuant to the Procedures, I have determined that the appropriate sanctions for your misconduct are as follows:

1. As a result of being found to have violated the Anti-Harassment Policy and because of the seriousness of your conduct as described above, **you are hereby expelled from Purdue University effective as of the later of the expiration of the time to appeal this determination without an appeal having been filed, i.e., December 31, 2018, or as of the date of the decision on any appeal.** *Expulsion, as defined in Section A.5 of the Regulations Governing Student Conduct, Disciplinary Proceedings, and Appeals, means that you are ineligible, on a permanent basis, to register for any academic programs under the sponsorship of Purdue University including, but not limited to, regional campuses and Purdue Polytechnic Statewide locations. This sanction will appear on your academic transcript;*

2. I direct that the Office of the Vice President for Human Resources work with other administrative offices to ensure that (a) you are permanently barred from any future employment with Purdue University; and (b) you are permanently barred from serving as a Volunteer (as that term is defined in University policy VI.B.2 or any successor policy); and

3. You are restricted from presence from all Purdue University property until December 31, 2028. This includes, but is not limited to, a restriction from accessing events, programs, buildings, and services associated with Purdue University.

Purdue University also prohibits any overt or covert act of reprisal, interference, restraint, penalty, discrimination, coercion, intimidation, or harassment against an individual for complaining of harassment or enforcing its Anti-Harassment Policy.

**Exhibit 17, p.7**

Pursuant to the Procedures (copies of which have been provided previously to the parties), any party (you or ▮▮▮▮▮) may appeal my determination to the Vice President for Ethics and Compliance, Alysa Christmas Rollock. Such appeal must be in writing and filed within ten days of the issuance of notification of the decision, with all supporting materials attached. Decisions not appealed within such time are deemed final. **Please note that your appeal, if any, must be received by Vice President Rollock by Monday, December 31, 2018 to be properly filed. The written appeal can be submitted via email to acrollock@purdue.edu. Please note that the University will be closed from 5:00 p.m. on Friday, December 21, 2018 thru 8:00 a.m. on Wednesday, January 2, 2019 for University Holidays and the University Recess. Vice President Rollock will accept timely appeals delivered by email during the time the University is closed.**

Please contact me if you have any questions or concerns.

Sincerely,

*[signature]*

Katherine L. Sermersheim, Ph.D.
Associate Vice Provost and Dean of Students

Cc:    Panel Members
       Investigators