### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION OF LAFAYETTE

| | | |
|---|---|---|
| John Doe, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-56-TLS-JPK |
| | ) | |
| Purdue University; Alysa Christmas Rollock; | ) | |
| Katherine L. Sermersheim; Christie Wright; | ) | |
| Jeff Rooze; John/Jane Moe(s) 1-5; | ) | |
| | ) | |
| Defendants | ) | |

---

### Plaintiff's Memorandum Contra To Defendants' Motion To Dismiss

---

As fully explained herein, Plaintiff John Doe ("Doe") requests this Court reject the  motion to dismiss filed by Defendants are Purdue University ("Purdue"); Purdue Vice President Alysa Christmas Rollock ("Rollock"); Purdue Dean Katherine L. Sermersheim ("Sermersheim"); Purdue Senior Associate Director Ms. Christie Wright ("Wright");  Purdue Investigator Mr. Jeff Rooze ("Rooze"), and yet to be identified John/Jane Moe(s) who adjudicated disciplinary charges filed against Doe ("JM Adjudicators").

Respectfully Submitted,

/s/ Eric J. Rosenberg
Eric J. Rosenberg (Ohio Bar No. 0069958)
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
740.644.1027 phone
866.498.0811 fax
erosenberg@rosenbergball.com

## Issue Statement

Whether the Supreme Court's *Twombly* and *Iqbal* decisions mandate the rejection of Defendants' FRCP 12(b)(6) motion to dismiss Doe's Due Process and Equal Protection claims. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)(finding a FRCP 12(b)(6) motions must be denied if plaintiff "state(s) a claim to relief that is plausible on its face."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## Table of Contents

(1)    Introduction and Standard of Review ……......…………….…………….…………….. 1

(2)    Doe's Equal Protection Claim Cannot Be Dismissed…………………….……………… 2

(3)    Doe's §1983 Due Process Claims Cannot Be Dismissed Because Individual Defendants Violated Doe's Liberty Interest……………………………………………………………….….. 10

(3)(a)  Doe's §1983 Due Process Claims cannot be dismissed because Individual Defendants' Gender-Bias and/or Accuser-Favored-Bias caused them to subject Doe to a "sham" disciplinary designed to achieve a predetermined guilty finding……………………………………….…………… 18

(4)    Individual Defendants Are Liable For The Injunctive Relief Doe seeks in Counts 1, 3, and 4… 28

(5)    Defendants' Motion To Dismiss Lacks Merit Because It is Based on Claims Not Contained In Doe's Complaint……………………………………………………………...…………… 31

(6)    Conclusion…………………………………………………………………….….... 33

## Table of Authorities

*Already, LLC v. Nike, Inc.,* 568 U.S. 85 (2013)……………………………………………… 30

*Amaya v. Brater,* 993 N.E.2d 311 (Ind. Ct. App. 2013)………………………………….…. 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………………………… 1

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)………………………………………...… 2

*Bernard v. United Twp. High Sch. Dist. No. 30*, 5 F.3d 1090 (7th Cir. 1993)……………... 14-15

*Calderon v. Ashmus,* 523 U.S. 740 (1998)………………………………………………… 29-30

*Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013)……………………………… 14-15

*Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769 (7th Cir. 2013)…………… 14, 16

*City of L.A. v. Lyons,* 461 U.S. 95 (1983)……………………………………………………  27

*Council 31 of the Am. Fed'n of State, Cty. and Mun. Emps., AFL-CIO v. Quinn,*
680 F.3d 875 (7th Cir. 2012)…………………………………………………………  29

*Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999)………...  8

*DeWalt v. Carter,* 224 F.3d 607 7th Cir. 1999)……………………………………………..  10

*Doe v. Allee,* 30 Cal.App.5th 1036  (2019)…………………………………………………  23

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)……………………………………………  7, 12, 20

*Doe v. Brandeis Univ*., 177 F. Supp. 3d 561 (D. Mass. 2016)………………………………...  13

*Doe v. Brown Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016)……………………………………...  14

*Doe v. Claremont McKenna College,* 236 Cal.Rptr.3d 655 (2018)……………………………  23

*Doe v. Columbia College Chi.*, 2019 WL 3796000 (7th Cir. Aug. 13, 2019)…………………...  7

*Doe v. Cummins*, 662 F. App'x 437(6th Cir. 2016)………………………………….…  28-29

*Doe v. Galster,* 768 F.3d 611 (7th Cir. 2014)………………………………………………...  8

*Doe v. Marymount Univ.,* 297 F.Supp.3d 573 (E.D.VA. Mar. 14, 2018)……………………...  22

*Doe v. Miami Univ.,* 882 F.3rd 579  (6th Cir. 2018))…………………………………………  5-6

*Doe v. N. Mich. Univ.,* No. 2:18-CV-196, 2019 WL 2269721 (W.D.Mi. May 28, 2019)……...  20

*Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 658 (S.D. Ohio 2016)…………………………  3

*Doe v. Penn. St. Univ.,* No.17-cv-1315, 2017 WL 3581672 (M.D.Pa. Aug. 18, 2017)…...  22, 25

*Doe v. Penn. St. Univ.* No. 4:18-cv-164, (M.D. Pa. Aug. 21, 2018)
(unreported decision attached in Exhibit 1)………………………………………………..  21, 24

*Doe v. Purdue Univ.,* 928 F.3d, 652 (7th Cir. 2019)…………………………….……  *Passim*

*Doe v. Rhodes College,* No.2:19-cv-2336-JTF, (W.D. Tenn. June 14, 2019)
(unreported decision attached in Exhibit 1)……………………………………………………  21

*Doe v. Rollins College,* No. 6:18-cv-1069,  2019 WL 208283 (M.D. Fla. Jan. 16, 2019)…...…  6

*Doe v. The Trustees of The Univ. of Penn.,* No.16-5088, 2017 WL 4049033
(E.D. Pa. Sept. 13, 2017)……………………………………………………..…..  3

*Doe v. The Regents of The Univ. of Cali.,* 28 Cal.App.5th 44 (2018)……………………………  23

*Doe v. Univ. of Colorado, Boulder,*  No. 1:18-cv-02243-LTB, 2019 WL 764568
(D. Co. Feb. 21, 2019)…………………………………………………………..…  3, 21

*Doe v. Univ. of Cinn.* No.16-4693, 2017 WL 4228791 (6th Cir. Sept. 25, 2017)…………....  21

*Doe v. Univ. of Mich.,* No.2:18-cv-11776-AJT-EAS (E.D.S.D. Mich. July 6, 2018)
(unreported decision attached in Exhibit 1)……………………………………………  22

*Doe v. Univ. of Miss.,* No. 3:16-CV-63-DPJ-FKB, 2018 WL 3570229
(S.D. Miss. July 24, 2018)……………………………………………………..……..  3, 24

*Doe v. Univ. of Miss.,* 361 F.Supp.3d 597 (S.D. Miss. 2019)………………………………..…  21

*Doe v. Univ. of Southern Cali.,* 28 Cal.App.5th 26 (2018)………………………………………  22

*Doe v. Univ. of  Southern Miss.,* No.2:18-cv-153, (S.D.E.D. Miss., Sept. 26, 2018)
(unreported decision attached in Exhibit 1)……………………………………………  22

*Doe v. Westmont College,* 34 Cal.App.5th 622 (2019)……………………………………...…  23

*Dominguez v. Hendley,* 545 F.3d 585 (7th Cir. 2008)……………………………………………  26

*Ex parte Young*, 209 U.S. 123 (1908)……………………………………………………………  28

*Ferguson v. Lamb,* No. 4:14-CV-74, 2016 WL 2865951 (N.D. Ind. May 17, 2016)…………  7-8

*Flaim v. Med Coll. of Ohio,* 418 F.3d 629 (6th Cir. 2005)……………………………………  12

*Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007)…………………………………………………  28

*Frost v. Univ. of Louisville,* 3:19-CV-227-CRS, 2019 WL 2288453
(W.D. Ky. May 29, 2019)……………………………………………………………...  21

*Furey v. Temple Univ.,* 884 F.Supp.2d 223  (E.D.Pa.2012)…. …………………………………  13

*Gaff v. Indiana-Purdue Univ. of Ft. Wayne,* 45 N.E.3d 458 (Ind. Ct. App. 2015)
*aff'd in part, vac'd in part* 51 N.E.3d 1163 (Ind. 2016)………………………………...  29

*Green v. Mansour*, 474 U.S. 64 (1985)………………………………………………………...  28

*Greenhill v. Bailey*, 519 F.2d 5 (6th Cir. 1975)… ………………………………………….. 13

*Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668 (7th Cir. 2016)………………………… 25

*Hudson v. Palmer*, 468 U.S. 517 (1984)……………………………………..……….. 14-15

*Kashani v. Purdue Univ.,* 813 F.2d 843(7th Cir. 1987)…………………………………… 29-30

*Kay v. Bd. of Educ. of City of Chi.*, 547 F.3d 736 (7th Cir. 2008)………………………… 14, 16

*Kentucky v. Graham*, 473 U.S. 159 (1985)……………………………………………… 29

*King v. DePauw Univ.*, 14-cv-70, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014)………… 12-14

*Lee v. Univ. of New Mexico,* No.1:17-cv-01230 (N.M. Sept. 20, 2018)
(unreported decision attached in Exhibit 1)…………………………………………… 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)………………………………….. 30

*Manley v. Law,* 889 F.3d 885 (7th Cir. 2018)……………………………………………. 26

*Marshall v Indiana Univ*. 170 F.Supp.3d 1201 (S.D. Ind. Mar. 15, 2015)…………….... 12-13

*McCauley v. City of Chi.,* 671 F.3d 611 (7th Cir. 2011)…………………………………….. 9

*McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873 (7th Cir. 2012)…………………… 7, 8

*Medlock v. Trs. of Ind. Univ.*, 738 F.3d 867 (7th Cir. 2013)……………………………… 32

*Nabozny v. Podlesny,* 92 F.3d 446 (7th Cir. 1996)……………………………….... 2, 7-8

*Newsome v. Batavia Local Sch. Dist.,* 842 F.2d 920 (6th Cir. 1988)………………………… 25

*Nokes v. Miami Univ.,* No. 1:17-cv-482, 2017 WL 3674910 (S.D.OH. Aug. 25, 2017)……... 21

*Oliver v. Univ. of Tx. Southwestern Med. Sch.,* NO. 3:18-CV-1549-B, 2019 WL 536376
(N.D. Tx. Feb. 11, 2019)………………………………………………………………… 21

*Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997)……………………………………… 17

*O'Shea v. Littleton,* 414 U.S. 488 (1974)………………………………………………… 27

*Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828 (7th Cir. 2012)……………..………… 19-20

*Powell v. Montana State Univ.,* No. 2:17-cv-15 SEH, 2018 WL 6728061
(MT Dec. 21, 2018)………………………………………………………………………… 21

*Roe v. Javaune Adams-Gaton,* Case No. 17-cv-945-EAS-CMV (S.D.E.D. Oh. April 17, 2018)(unreported decision attached in Exhibit 1)……………………………………………...  22

*Schaer v. Brandeis Univ.*, 716 N.E.2d 1055 (Mass. App. Ct. 1999)…………………………...  13

*Schenke v. Phelps,* No. 4:18-CV-87, 2019 WL 2503670 (N.D. Ind. June 17, 2019)…….....…  27

*Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982)……………………………………………  7-8

*Shepard v. Irving*, 77 F. App'x 615 (4th Cir. 2003)……………………………………………  29

*Sherwin Manor Nursing Ctr., Inc. v. McAulijfe,* 37 F.3d 1216 (7th Cir. 1994)………………..  9

*Simic v. City of Chi.,* 851 F.3d 734 (7th Cir. 2017)……………………………………………  27

*Smith on Behalf of Smith v. Severn,* 129 F.3d 419 (7th Cir. 1997)……………………...…  7

*Smock v. Bd. of Regents of the Univ. of Mich.* 353 F.Supp.3d 651 (E.D. Mich. 2018)…….....  20

*Triad Asso., Inc.,* v. Robinson 10 F.3d 492 (7th Cir. 1993)……………………………………  10

*Wasserman v. Purdue Univ. ex rel. Jischke,* 431 F. Supp. 2d 911 (N.D. Ind. 2006)………  29-30

*Weinstein v. Univ. of Ill.*, 811 F.2d 1091 (7th Cir. 1987)…………………………………..  14-15

1.      **Introduction And Standard Of Review**

Defendants violated Doe's Due Process, Equal Protection, and Title IX rights after expelling Doe from Purdue based on Jane Roe's ("Roe") false allegations of sexual misconduct. *See generally, Doc.23,* (containing Doe's Amended Complaint)("Complaint").     Defendants violated these rights by manifesting (a) gender biased motivations against male students like Doe ("Gender-Bias"); and/or (b) bias in favor of students who accuse other students of engaging in sexual misconduct ("Accuser-Favored-Bias").

Defendants admit evidence of Purdue's Gender-Bias precludes the dismissal of Doe's Title IX claim.  *See generally, Doc.30,* p.2 (acknowledging Doe's Title IX in Count 2 cannot be dismissed).   This admission, precludes the dismissal of Doe's Equal Protection claim because Doe established Purdue provided females accused of sexual misconduct with preferential treatment denied to similarly situated males.  *Infra,* §2 (discussing same).  Similarly, Doe's Due Process claims cannot be dismissed because Individual Defendants[1] violated Doe's liberty interests set forth in The Seventh Circuit's recent decision in *Doe v. Purdue Univ.,* 928 F.3d, 652, 661-63 (7th Cir. 2019). *Infra,* §3 (discussing same).

Defendants attempt to sidestep these facts by claiming only an Indiana state court has the authority to remedy Defendants' violations of Doe's Constitution rights.  *Doc.30,* pgs. 2-3, 6-7, 14-17.  Defendants' claim is false because this Court has jurisdiction to render judgment on Doe's §1983 Constitution claims.    *Infra,* pgs.14-17, 26-27 (discussing same).   Therefore, Doe respectfully requests this Court reject Defendants' motion to dismiss pursuant to the Supreme Court's *Twombly* and *Iqbal* decisions.   *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

---

[1] Doe's Complaint defined Individual Defendants as Rollock, Sermersheim, Wright, Rooze, and JD Adjudicators. *Doc.23,* p.1.

1

(2007)(finding a FRCP 12(b)(6) motions must be denied if plaintiff "state(s) a claim to relief that is plausible on its face."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

2.   **Doe's Equal Protection Claim Cannot Be Dismissed**

Pursuant to the *Nabozny* decision cited by Defendants,[2] Doe's Equal Protection claim cannot be dismissed.  *Nabozny* noted plaintiffs establish the "gravamen of equal protection" by presenting evidence suggesting "decisionmaker[s] singled out a particular group for disparate treatment and selected [their] course of action at least in part for the purpose of causing its adverse effects on the identifiable group."  *Nabozny,* 92 F.3d at 453-54.  In admitting  Doe's Title IX claim cannot be dismissed,[3] Defendants acknowledge Doe's Equal Protection claim is immune from dismissal.  This is because to establish Title IX liability under *Purdue,* Doe needed to:  "allege facts, [that] if true, raise a plausible inference that the university discriminated against [Doe] 'on the basis of sex." *Purdue,* 928 F.3d, at 668 (citations omitted).

Stated another way, the Gender-Bias evidence supporting Doe's Title IX claim precludes the dismissal of his Equal Protection claim.   This is particularly true because Doe's Gender-Bias evidence far surpasses the three types of actionable Gender-Bias identified in *Purdue.*  The first type of actionable Gender-Bias evidence identified in *Purdue* was a single newspaper article posted by a campus group connected to plaintiff's disciplinary proceeding that suggested the group's Gender-Bias.   *Purdue,* 928 F.3d at 669.  Doe does far more than cite only one newspaper article.   Doe identified six examples of temporality connected anti-male campus programing,

---

[2] *Doc.30,* p.18 (quoting *Nabozny v. Podlesny,* 92 F.3d 446 (7th Cir. 1996)).

[3] *Id.,*  p.2

protests, and newspaper articles that contributed to Individual Defendants' Gender-Bias and/or Accuser-Favored-Bias.  *Doc.23,* ¶¶51-55, 72-73 (discussing same).

Doe also detailed how Purdue exhibited Gender-Bias and/or Accuser-Favored-Bias by encouraging Individual Defendants and students to "believe" students who alleged they were sexually assaulted.  *Id.,* ¶70.  Additionally, Doe outlined how Purdue refused to respond to Doe's public records request for Title IX training materials which likely established Individual Defendants' Gender-Bias and/or Accuser-Favored-Bias in ways similar to four decisions that rejected motions to dismiss Title IX claims based in part on bias in such training materials.  *Id.,* ¶71. (discussing  (1) *Doe v. Univ. of Mississippi,* No. 3:16-CV-63-DPJ-FKB, 2018 WL 3570229, *4-7 (S.D. Miss. July 24, 2018) which refused to dismiss a Title IX claim, in part, because the university's Title IX training materials "might suggest bias" favoring accusing students); (2) *Doe v. the Univ. of Colorado, Boulder,* No. 1:18-cv-02243-LTB, 2019 WL 764568, *9.  (D. Co. Feb. 21, 2019) which denied a motion to dismiss a male plaintiff's Title IX claim because plaintiff alleged the university's "trauma-informed" practices favored female accusing students); (3) *Doe v. The Trustees of The Univ. of Penn.,* No.16-5088, 2017 WL 4049033 *10 (E.D. Pa. Sept. 13, 2017) which rejected a motion to dismiss a male plaintiff's contract claim in part because his universities' policies required investigators and adjudicators be trained "to provide a process that is 'free of bias'' and plaintiff alleged  the university's training did: "not promote fairness and impartiality' and, instead, 'undermine[d] principles of impartiality, favor[ed] complainants (typically female), and [created] biase[d] proceedings against respondents (typically male);" and (4) *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 658 (S.D. Ohio 2016) which found biased sexual misconduct training can overcome the "presumption" that university employees acted with "honesty and integrity" in disciplining a student for alleged sexual misconduct).

3

The second form of actionable Gender-Bias described by *Purdue* involved allegations suggesting a "financial motive for discriminating against males in sexual assault investigations." *Purdue, 928 F.3d* at *668.  Purdue* discussed this "financial motive" within the context of pressure imposed on Purdue from the U.S. Dept. of Education's Office of Civil Rights' ("OCR")  2011 Dear Colleague Letter.   *Id.*  Doe did far more than just allege financial pressure related to OCR's 2011 Dear Colleague Letter.  Doe discussed how his erroneous discipline was caused in part by pressure related to three temporally connected OCR investigations of Purdue stemming from females alleging Purdue discriminated against them in Title IX disciplinary proceedings.  *Doc.23,* ¶¶57-59.   *See also, Id.,*  ¶¶55-61, 63, 65-69 (setting forth other examples of OCR pressure on Defendants).

Similarly, Doe detailed how Individual Defendants' Gender-Bias and/or Accuser-Favored-Bias was caused by three heavily publicized temporally connected lawsuits filed by females who alleged Purdue discriminated against them in Title IX disciplinary proceedings.  *Id.*  ¶¶40-50.  Doe also outlined how Defendants' pecuniary interest in finding Doe guilty was linked to these OCR investigations and lawsuits.  *See e.g., Doc.23,* ¶105 (noting: Sermersheim's Gender-Bias and/or Accuser-Favored-Bias was "shaped by: (a) temporally connected student protests and/or campus events that manifest [Gender-Bias] and/or [Accuser-Favored-Bias]; and (b) pecuniary benefits Sermersheim and Purdue would likely reap in defending themselves against the lawsuits and OCR complaints filed by female Purdue students that are addressed in this Complaint.").

The third type of actionable Gender-Bias described in *Purdue* related to the plaintiff's claim that his adjudicators manifest a "bias[] in favor of" students who accused other students of sexual misconduct.  *Purdue, 928 F.3d,* 669.   The plaintiff established this bias in part by detailing how adjudicators (a) allegedly displayed "hostility" towards plaintiff at his hearing; (b) did not

4

personally hear exculpatory testimony from plaintiff's witnesses; and (c) incorrectly found the accusing student more creditable than plaintiff in a "he-said she-said case." *Id.*

John's evidence of adjudicator bias far surpasses the bias in *Purdue.* For instance, five pages of Doe's Complaint set forth over a dozen examples of the blatant errors in Doe's Adjudicators'[4] finding that Roe was more creditable than Doe in this "he-said she-said case." *Doc.23,* ¶¶108-119.    Doe's Adjudicators' also never personally heard exculpatory testimony from Doe's witnesses.   *See generally, Id.,* ¶¶6 (discussing how Doe's hearing consisted of testimony by only Doe, Roe, Wright, and Rooze).

Moreover,  Doe detailed how: "Adjudicators' comments, questions, and body language during the Panel Hearing manifest [Gender-Bias] and/or [Accuser-Favored-Bias] in part by falsely suggested Doe had a history of sexually dominating females."   *Doc.23,* ¶104.  For example, Doe noted:

> "[t]he most prominent example of this type of behavior was displayed by Sermersheim who posed numerous questions and comments based on sex-based stereotypes such as whether Doe (a) had a history of acting aggressively with other women he had sex with; (b) lacked the ability to understand how consent to sexual contact could be withdrawn; and (c) had ever been criminally charged for sexual misconduct." *Id.*

In addition to Sermersheim's questioning based on Gender-Bias stereotypes, Doe detailed how "the Asian Panel Hearing Member told Doe that he knew 'young men' tend to discuss their sexual exploits with their male friends and asked questions suggesting Doe engaged in similar discussions which corrupted the testimony of Doe's witnesses." *Id.,* ¶107.

Doe's Adjudicators' Gender-Bias conduct is akin to Gender-Bias addressed in the Sixth Circuit's *Miami Univ.* decision cited in Doe's Complaint.  *Id.,* ¶106. (quoting *Doe v. Miami Univ.,*

---

[4] Doe's Adjudicators  were JM Adjudicators, Sermersheim, and Rollock.

5

882 F.3rd 579 (6th Cir. 2018)). *Miami Univ.* determined a male plaintiff like Doe advanced a valid Due Process claim by alleging a university adjudicator made remarks "designed to reduce [plaintiff's] credibility while bolstering [accusing student's] credibility" by "announc[ing] during the hearing that 'I'll bet you do this [i.e., sexually assault women] all the time." *Id.,* (quoting *Miami Univ.,* 882 F.3rd at 601)). *Miami Univ.* found this adjudicator's "statement implie[d] that [she] had determined prior to the hearing that [plaintiff's] was responsible for the misconduct alleged in this incident and had a propensity for engaging in sexual misconduct." *Id.*

 Doe's Adjudicators' Gender-Bias conduct is also similar to facts which caused *Rollins* to reject a Title IX claim. *Doe v. Rollins College,* No. 6:18-cv-1069, 2019 WL 208283, *4 (M.D. Fla. Jan. 16, 2019). *Rollins* found the plaintiff established actionable Gender Bias in part by alleging the defendant college: "excused any inconsistencies in Jane Roe's account concerning whether she verbalized consent but entirely disregarded [p]laintiff's assessment of consent on account of [p]laintiff's prior sexual history, which Plaintiff contends should not have been considered." *Id.* Doe's Gender-Bias evidence should be equated to the actionable Gender-Bias evidence in *Miami Univ.* and *Rollins* even though these decisions addressed different causes of action. This is because the plaintiffs in *Miami Univ.* and *Rollins* defeated motions to dismiss by presenting Gender-Bias evidence similar to that Doe presents in support of his Equal Protection claim.

Even if Individual Defendants attempt to explain away their conduct, Doe's Equal Protection claim cannot be dismissed because Doe detailed how Purdue provided preferential treatment to females who were accused by males of engaging in sexual misconduct. *See e.g., Doc.23,* ¶¶74-75. For instance, Wright told to a male student that he needed to file a formal "complaint" if he wanted Purdue to investigate a female student for engaging in sexual misconduct.

*Id.* This requirement manifest Gender-Bias because Purdue did not impose this requirement on females who alleging males engaged in sexual misconduct. *Id.* Instead, Purdue prosecuted these females' complaints on their behalf as "University Initiated Complaints." *Id.* These concrete examples of Defendants' Gender-Bias and/or Accuser-Favored-Bias unequivocally distinguish Doe's Equal Protection claim from six decisions cited by Defendants. *Doc.30,* pgs.18-12 (discussing *Doe v. Columbia College Chi.*, 2019 WL 3796000 (7th Cir. Aug. 13, 2019); *Nabozny* 92 F.3d 446; *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982); *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873 (7th Cir. 2012); *Ferguson v. Lamb,* No. 4:14-CV-74, 2016 WL 2865951 (N.D. Ind. May 17, 2016); and *Smith on Behalf of Smith v. Severn,* 129 F.3d 419 (7th Cir. 1997).

For instance, no Equal Protection claim was made against the private college in *Columbia College.* *Columbia College Chi.,* 2019 WL 3796000. Rather, *Columbia College* involved Title IX claims dismissed because the plaintiff could not adequately tie his Gender-Bias evidence to his adjudicators' conduct and/or statements. *Id.,* *3-4 (discussing *Purdue,* 928 F.3d at 688 and *Doe v. Baum*, 903 F.3d at 581). Here, Doe ties his Gender-Bias evidence to Adjudicators' conduct and/or statements in ways *Purdue* determined establishes actionable Title IX Gender-Bias. *Supra,* p.4-6 (discussing same).

Defendants allege *Smith* required Doe prove the Individual Defendants handled his proceeding differently than they would have handled sexual misconduct allegations in a lesbian relationship. *Id.,* p.19. (discussing *Smith,* 129, F.3d at 429). *Smith* had nothing to do with lesbianism. Instead, *Smith* dismissed an Equal Protection claim in *summary judgment* because a plaintiff could *not* establish school administrators treated "similarly situated" students differently in disciplinary proceedings. *Smith,* 129 F.3d at 429. Doe satisfies this requirement in part by detailing how Purdue provided preferential treatment to females by not prosecuting them under

7

"University Initiated Complaints" when males made sexual misconduct against them.  *See e.g.,* *Doc.23,* ¶¶74-75.

Doe's Gender-Bias evidence also exceeds that presented by the plaintiff in *Ferguson* decision cited by Defendants.  For, the pro-se plaintiff in *Ferguson* did "not allege[] *any facts* to show that [defendant] treated [plaintiff] differently because of his gender."  *Ferguson* 2016 WL 2865951 at *5 (emphasis added).  Similarly, Defendants' reliance on *Nabozny* proves Doe's claims cannot be dismissed.  *Doc.30,* p.18 (quoting *Nabozny* 92 F.3d at 453-454).  This is because *Nabozny* determined only a jury could render judgment on the plaintiff's Equal Protection claim because the plaintiff's evidence suggested school administrators disciplined male-on-female misconduct more severely than (a) female-on-male misconduct, or (b) male-on-male misconduct.  *Nabozny,* 92 F.3d at 454-455.

The Gender-Bias and/or Accuser-Favored-Bias detailed above also distinguishes Doe's Complaint from the *Shango* decision cited by Defendants. *Doc.30,* p.18-19 (discussing *Shango,* 681 F.2d at 1104).  *Shango* dismissed an Equal Protection claim because the "*only* allegations . . . which even suggested [] disparate treatment"  involved *unsubstantiated* allegations made by "a jailhouse lawyer."  *Shango,* 681 F.2d at 1104 (emphasis added).  Here, Defendants admit Doe's Gender-Bias evidence is substantial enough to preclude the dismissal of his Title IX claim. *Doc.30,* p.2.  This acknowledgment proves Defendants cannot rely on *McReynolds* because it dismissed employment discrimination claims that were "unsupported by the necessary *factual* allegations to support a reasonable inference of discriminatory intent.  *McReynolds,* 694 F.3d at 886 (emphasis in original).

Defendants' back-up *Davis* and *Galster* arguments similarly lacks merit.  *Doc,30,* p.19 (discussing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999), and *Doe v. Galster,* 768 F.3d 611 (7th Cir. 2014)).  Defendants allege Doe's Equal Protection claims

8

fail because these decisions "obligated" Defendants to "investigate and decide" Roe's allegations against Doe. *Id.*   But, Defendants forgot to mention Doe does not oppose "Purdue's legitimate goal of preventing sexual assault." *Doc.23,* ¶76.   Instead, Doe's claims are based on Defendants' Gender-Bias and/or Accuser-Favored-Bias which caused them to: "(a) afford females like Roe preferential treatment regarding Title IX and/or Purdue Policies; (b) severely discipline male students like Doe who are alleged to have engaged in sexual misconduct regardless of their innocence, and (c) equate 'victim/complainants' in sexual misconduct proceedings as being females who receive preferential treatment over the males they accuse of sexual misconduct." *Id.*

Finally, Doe's aforementioned Gender-Bias evidence completely disprove the following three arguments advanced by Defendants (1) Doe "does not even attempt to allege" Defendants treated female students "differently" than males accused of sexual misconduct;[5] (2) Doe failed to: "allege enough . . . to nudge his claim of purposeful discrimination across the line from conceivable to plausible;"[6] and (3) Doe bases his Equal Protection  "only" on the "application of Purdue's conduct rules" regarding "weigh[ing]of the evidence" and *not* on Doe's "classification" as a member of a the definable class of male students. *Id.,* p.19.

 As a result, Doe's Equal Protection  claim cannot be dismissed.   This is particularly true because this claim is not constrained by the "stigma-plus" test discussed in §3 below.   *See e.g., DeWalt v. Carter,* 224 F.3d 607, 613 (7th Cir. 1999)(finding Equal Protection claims do not require loss of a Due Process liberty/property interest); *Sherwin Manor Nursing Ctr., Inc. v. McAulijfe,* 37 F.3d 1216, 1220 (7th Cir. 1994)(determining district court incorrectly extended Due Process injury

---

[5] *Doc.30,* p.19.

[6] *Id,* p.18 (quoting *McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011).

requirement to all §1983 claims); *Triad Asso., Inc.,* v. Robinson 10 F.3d 492, 500 (7th Cir. 1993)("governmental disregard of the fundamental dictate of equal treatment is the beginning and end of the Equal Protection inquiry").

3.  **Doe's §1983 Due Process Claims Cannot Be Dismissed Because Individual Defendants Violated Doe's Liberty Interest**

Contrary to Defendants' claims,[7] Doe establishes a violation of his Due Process liberty interests under *Purdue*'s "stigma-plus test." *Purdue,* 928 F.3d at 661-63  *Purdue* described this test as requiring plaintiffs like Doe to plausibly detail how: "the state inflicted reputational damage accompanied by an alteration in legal status that deprived [plaintiff] of a right he previously held." *Id., 661* (citations omitted).   The "legal status" of the plaintiff in *Purdue* was "altered" when "Purdue formally determined [he] was guilty of a sexual offense" and suspended him for "an academic year." *Id.,* 662.   Here, Doe's "legal status" was similarly altered when he was expelled based on Roe's false allegations. *Doc.23,* ¶¶6, 121-125.

 After addressing the altered legal status requirement, *Purdue* discussed how the plaintiff's discipline violated his liberty interest by causing "his expulsion from the Navy ROTC program . . . and foreclos[ing] the possibility of his re-enrollment in it." *Id.,* 662 (citations omitted).   In reaching this decision, *Purdue* found it would have been "virtually impossible" for plaintiff to "seek employment in his field of choice, the Navy" without signing a form authorizing Purdue to inform the Navy of plaintiff's sexual misconduct based discipline. *Id.,* 661.   This was because plaintiff had a "legal obligation" to "disclose" his discipline to the Navy. *Id.*

---

[7] *Doc.30,* pgs.11-14 (containing Defendants' allegation that Doe cannot establish a liberty interest under the "stigma-plus test.").   It should be noted Defendants incorrectly claim Doe's Complaint "recast previously claimed property interests as 'liberty interests.'" *Id.,* p.10.   Doe's original complaint alleged violations of both property interests and liberty interests. *See e.g., Doc.1* ¶¶ 133-34; 152, 171 (discussing Doe's liberty interests).

Doe's Complaint details how he faces the same type of "legal obligation" to "disclose" his discipline.   Doe does so in part by including a declaration from attorney Cynthia Purcell Garrett ("Garrett").   *Doc.23-22*.   Garrett is a board member of two non-profits that provide support for students and families affected by inequitable Title IX processes.   *Id.,* ¶2-3.   Garrett has addressed Title IX issues at the request of the American Bar Association and the American Law Institute.   *Id.,* ¶¶5-6.   The expert opinions in Garrett's declaration are based on her review of Doe's original complaint and over 100 conversations with students and/or their parents whose academic and/or aspirations were terminated by universities' Title IX disciplinary sanctions.    *Id.,* ¶7-9. Garrett details how Purdue's erroneous discipline of Doe terminated Doe's career prospects of becoming an attorney and/or working in the field of finance.    *Id., Doc.23,*   ¶¶159-164. Specifically, Garrett observed:

> Doe's chosen field of employment triggers his legal obligation to disclose – often under penalty of perjury - Purdue's discipline of Doe to: (a) law schools; (b) graduate schools to which Doe might seek an MBA;  and/or (c) state and/or federal entities that issue licenses to practice law and/or work in financial services professions.

> It would be virtually impossible for Doe to obtain the educational and/or licensing credentials to practice law or work in the financial services profession without encountering a legal obligation to disclose Purdue's discipline to law schools, graduate schools, and/or licensing boards.  This is because applications for most law schools, graduate schools, and licensing boards contain a legal obligation to disclose disciplinary actions such as Purdue's discipline of Doe.

> After Doe complied with his legal obligation to disclose Purdue's discipline to the law schools, graduate schools, and/or licensing boards,  Doe would almost certainly be required to sign a release authorizing Purdue to provide the law schools, graduate schools, and/or licensing boards with documents related to Purdue's discipline of Doe.

> If Doe signed the release discussed in the preceding paragraph, it would be virtually impossible for Doe to enroll in a law school or graduate school comparable to Purdue.  This is because American institutions of higher education with reputations for excellence routinely reject applications of students who disclose sexual misconduct disciplinary findings in applications for admissions.

11

If Doe failed to report Purdue's discipline on applications to law schools, graduate schools, and/or licensing boards – and Doe's failure was subsequently revealed - it is more likely than not that the academic and licensing institutions would impose sanctions which could include, but not be limited to, expulsion from the academic institutions and/or licensed professions. *Id.* ¶¶ 160-164 (internal citations omitted).

Garrett also quoted eight court decisions that address the virtually impossibly that Doe could obtain the educational and/or licensing credentials he seeks given Defendants' erroneous discipline. *Id.,* ¶163 ("*Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018)(noting '[t]ime and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct . . . [b]eing labeled a sex offender by a university has both an immediate and lasting impact on a student's life . . . [such as]  difficulty obtaining educational and employment opportunities down the road, especially if he is expelled.'); *Flaim v. Med Coll. of Ohio,* 418 F.3d 629, 638 (6th Cir. 2005) (discussing how disciplinary violation will 'interfere with later opportunities for higher education and employment" is so clear as to almost be a truism.'); *Marshall v Indiana Univ*. 170 F.Supp.3d 1201, 2016 (S.D. Ind. Mar. 15, 2015)(discussing the implication of disclosing a sexual misconduct disciplinary finding as being the 'inability to reenroll at another university . . . [because any] subsequent university to which a student may apply always knows of the reasons for his prior dismissal. If he leaves without having earned his degree, the student must make an affirmative showing to any subsequent university to which he applies that he left the original university in good standing'); *King v. DePauw Univ.*, 14-cv-70, 2014 WL 4197507 *13 (S.D. Ind. Aug. 22, 2014)('[t]he Court finds it inevitable that [plaintiff] would be asked to explain [the discipline to] future employers or graduate school admissions committees, which would require him to reveal that he was found guilty of sexual misconduct by DePauw. Successfully seeing this lawsuit to its conclusion could not erase the gap or the transfer; the question will still be raised, and any explanation is unlikely to fully erase the

12

stigma associated with such a finding.'); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 573, 607 (D. Mass. 2016) (noting a sexual misconduct finding 'may permanently scar [a student's] life and career," as he or she would be "marked for life as a sexual predator'); *Furey v. Temple Univ.,* 884 F.Supp.2d 223, 247-48 (E.D.Pa.2012) ('[e]xpulsion denies the student the benefits of education at his chosen school. Expulsion also damages the student's academic and professional reputation, even more so when the charges against him are serious enough to constitute criminal behavior. Expulsion is likely to affect the student's ability to enroll at other institutions of higher education and to pursue a career.'); *Greenhill v. Bailey*, 519 F.2d 5, 8 (6th Cir. 1975) (acknowledging expulsion of medical student effectively destroyed his chance of practicing medicine; *Schaer v. Brandeis Univ.*, 716 N.E.2d 1055, 1059 (Mass. App. Ct. 1999) (discussing how student record of misconduct significantly harms student's future career).").

Defendants did not dispute the fact that these eight decisions are relevant to evaluating how Defendants' erroneous discipline made it virtually impossible for Doe to obtain his educational and/or occupational goals.   *See e.g., Doc.30,* (containing no discussion of *Greenhill, Schaer, Furey, Brandeis, Baum, Flaim*).   Instead, Defendants spill considerable ink attempting to prove *King* and *Marshall* mandate the dismissal of Doe's Constitutional claims.   *Id.,* pgs. 13, 15-16 (discussing *Marshall,* 170 F.Supp.3d at 1205, 1207, 1208, 1210); *Id.,* pgs. 13, 16, 17 (discussing *King,* 2014 WL 4197507 at *2-9, 11-13).   In reality,   *King* and *Marshall* do not support Defendants' argument.   This is partly because Defendants neglected to mention *King* rejected a Due Process because plaintiff "failed to identify a knowing violation of clearly established Due Process rights, as defined by . . . [the] Seventh Circuit."   This oversight cripple's Defendants' argument because *King predates Purdue* which subsequently defined how plaintiffs like Doe

establish a liberty interest violation by presenting facts detailed in Doe's Complaint. *Supra*, p.10-12 (discussing same); *Infra*, §3(a)-4 (discussing same).

Likewise, Defendants' reliance on *King* lacks merit because the plaintiff in that case had his Title IX claim dismissed because he could not establish actionable Gender-Bias. *King*, 2014 WL 4197507, *11). Here, Defendants admit Doe's Title IX claims cannot be dismissed because Doe presents actionable Gender-Bias. *Doc.30*, p.2. This acknowledgement precludes the dismissal of Doe's §1983 claims involving gender discrimination. *See generally*, §2 (discussing same). It also disproves Defendants' claim that *King* strips this Court of jurisdiction by requiring an Indiana state court render judgment on Doe's §1983 claims within the context of a "contract" claim. *Doc.30*, pgs.16-17. Defendants cite seven additional decisions to support of this erroneous argument. *Id.*, p.15 (discussing *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769 (7th Cir. 2013); *Id.*, pgs. 8, 16 (citing *Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013); *Id.*, p.17 (discussing *Doe v. Brown Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016); *Hudson v. Palmer*, 468 U.S. 517 (1984); *Kay v. Bd. of Educ. of City of Chi.*, 547 F.3d 736 (7th Cir. 2008); *Weinstein v. Univ. of Ill.*, 811 F.2d 1091 (7th Cir. 1987); and *Bernard v. United Twp. High Sch. Dist. No. 30*, 5 F.3d 1090 (7th Cir. 1993)).

Defendants' argument fails because two of these decisions contain no discussion of §1983 claims <u>or</u> whether state courts are the sole remedy for plaintiffs raising claims against public universities based on violations of United States Constitution. *King*, 2014 WL 4197507 (containing no discussion of a §1983 claim or what courts have jurisdiction to hear such claims) *Brown Univ.*, 210 F. Supp. 3d 310 (same).

The remaining decisions also disprove Defendants' argument. For example, *Hudson* does not support Defendants' lack of jurisdiction argument because it is devoid of any discussion about

14

whether state or federal courts have jurisdiction to address Doe's §1983 claims. *Hudson*, 468 U.S. 517. This did not stop Defendants from alleging *Hudson* stands for the proposition that a "contract" claim is Doe's sole remedy because such a claim is the equivalent of the "postdeprivation remedy" available to the plaintiff/inmate in *Hudson* who alleged destruction of his property by prison officials. *Doc.30,* p.17 (quoting *Hudson,* 468 U.S. at 533).

However, Defendants forgot to mention *Hudson* acknowledged this inmate might _not_ have to avail himself to a "postdeprivation remedy" in state court if state-law remedies would not address the damages alleged in his §1983 claim. *Hudson,* U.S. at 536-37. This lack of remedy exists here because any contract claim could not remedy the violations of Doe's Constitutional rights. This is because Purdue's policies allowed Individual Defendants to violate students' Due Process rights by prohibiting cross-examination and sanctioning the use of *ex parte* testimony and evidence in Title IX disciplinary proceedings. *Infra,* §3(a) (discussing same).

The lack of cross-examination and use of *ex parte* testimony and evidence authorized by Purdue's policies prove Defendants incorrectly rely on *Weinstein, Chang,* and *Bernard*. *Doc.30,* p.17 (discussing *Weinstein,* 811 F.2d at 1096; *Bernard,* 5 F.3d at 1093). *Id.,* pgs. 8, 16 (citing *Chang* 985 N.E.2d at 47). For, unlike Doe, the plaintiff in *Weinstein* did "not attack the adequacy of the process offered by the courts of Illinois or even of the process he thinks the University should have used." *Weinstein,* 811 F.2d at 1096.

*Bernard* involved a plaintiff raising claims based on "common-law" that did not trigger Article III jurisdiction. *Weinstein,* 811 F.2d at 1096. *Chang* is irrelevant because it did not address a "liberty" interest. Instead, *Chang* affirmed a _summary judgment_ dismissal of a §1983 claim because the plaintiff's alleged Due Process "property interest" was fully incorporated into her "breach of contract" claim. *Chang* 985 N.E.2d at 49-50. In this case, a contract claim could never

15

incorporate the relief Doe seeks because (a) Purdue's policies violate Doe's Constitutional rights, and (b) Defendants admit Doe seeks a new disciplinary hearing devoid of the Due Process violations and bias detailed in Doe's Complaint. *Doc.30.* p.9, fn.10.

*Kay* also undermines Defendants' argument that this Court lacks jurisdiction over Doe's Constitutional claims. *Doc.30,* p.17 (discussing *Kay* 547 F.3d at 739). Why? The lawsuit in *Kay* was dismissed for lack of jurisdiction only because it was based on Defendants' failure to honor a settlement agreement reached in plaintiff's prior federal §1983 lawsuit. *Kay* 547 F.3d at 739. Since the district court did not retain jurisdiction to address violations of this settlement, *Kay* determined the district court lacked jurisdiction because the remedy for a breached settlement agreement was a breach of contract claim in state court. *Id.*

Finally, Defendants incorrectly allege *Charleston* proves Doe's Due Process claim must be litigated in state court because it is based a "contractually-guaranteed university process." *Doc.30,* p.15. (quoting *Charleston,* 741 F.3d, at 773). This allegation lacks merit because *Charleston* addressed a "*property* interest" claim which did not qualify as a valid "constitutional claim[]." *Charleston,* 741 F.3d, at 772, 776. Here, Doe plead a "liberty" interest recognized by *Purdue* and therefore this Court has Article III authority to address Doe's Due Process claims. *Supra,* pgs.10-13 (discussing same).

Simply put, the aforementioned decisions prove Defendants incorrectly claim only an Indiana state court can adjudicate Defendants' Constitutional claims. This error is magnified by Defendants admission that this Court has Article III authority to force Defendants to reinstate Doe and give him a new hearing if Doe establishes Title IV liability. *Doc.30,* pgs.7-8. This may be why Defendants claim Doe must prove that "at the time of his discipline" he faced a "mandatory"

disclosure duty that would preclude Doe from participating in something akin to the "Navy ROTC program" in *Purdue*. *Doc.30,* p.12.

Defendants' claim lacks merit because *Purdue* does not establish this narrow temporal pathway to satisfying the stigma-plus test. To the contrary, *Purdue* noted that in: "*Dupuy* we held that the publication requirement of the stigma-plus test was satisfied when the plaintiffs were obligated to authorize a state agency to disclose its finding that they were child abusers to the plaintiffs' current and *prospective* employers." *Purdue,* 928 F.3d, at 662 (discussing *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005)(emphasis added).

In academia, the MBA program and/or law school that Doe seeks to enroll in are the functional equivalent of the "prospective employers" in *Purdue.* This is partly because Garrett's expert opinions and court decisions she cited prove Defendants' discipline of Doe make it virtually impossible for Doe to get the MBA or law degree he needs to obtain his academic and professional goals. These facts also disprove Defendants' argument that Doe's Complaint is similar to *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997). *Doc.30,* p.13-14.

The Defendants made an *Olivieri* argument in *Purdue* and it was rejected. *Purdue,* 928 F.3d, at 661. In doing so, *Purdue* noted the plaintiff in *Olivieri* was a "probationary police officer [who] asserted a procedural Due Process claim against his superintendent after he was fired for sexually harassing other probationers." *Id. Purdue* then noted how the Seventh Circuit rejected the plaintiff's claim in part because "it was *uncertain* whether [plaintiff's] prospective employers would ever find out why he was discharged." *Id.* (emphasis added). Garrett explains no such uncertainty exists here by noting:

> Doe's chosen field of employment triggers his legal obligation to disclose – often under penalty of perjury - Purdue's discipline of Doe to: (a) law schools; (b) graduate schools to which Doe might seek an MBA; and/or (c) state and/or federal entities that issue licenses to practice law and/or work in financial services

17

professions.

> It would be virtually impossible for Doe to obtain the educational and/or licensing credentials to practice law or work in the financial services profession without encountering a legal obligation to disclose Purdue's discipline to law schools, graduate schools, and/or licensing boards. *Doc.23,* ¶160-61.

Moreover, Doe faces a mandatory duty to disclose Defendants' discipline to every employer or institution of higher education that requires he produce his Purdue transcript which "permanently include[s] the following: 'STUDENT EXPELLED EFFECTIVE DECEMBER 31 2018 DUE TO VIOLATIONS OF UNIVERSITY REGULATIONS.'" *Id.,* ¶127.

Therefore, based on the facts and law detailed above, Doe requests this Court find Doe establishes a valid Due Process liberty interest claim under the "stigma-plus test." This is because Doe plausibly established how Individual Defendants' Gender-Bias and/or Accusing-Student-Bias caused them to "inflict[] reputational damage accompanied by an alteration in legal status that deprived [Doe] of a right he previously held." *Purdue,* 928, F.3d at 661 (citations omitted).

### 3(a)    Doe's §1983 Due Process Claims cannot be dismissed because Individual Defendants' Gender-Bias and/or Accuser-Favored-Bias caused them to subject Doe to a "sham" disciplinary designed to achieve a predetermined guilty finding.

Doe's Due Process claim cannot be dismissed because Individual Defendants subjected Doe to a disciplinary proceeding designed to achieve a predetermined finding of guilt. For instance, like the plaintiff in *Purdue,* Individual Defendants violated Doe's Due Process rights by "withholding the evidence on which [the university] relied in adjudicating [plaintiff's] guilt." *Purdue,* 928 F.3d at 663 (quoting *Goss v. Lopez*, 419 U.S. 565, 580 (1975) which determined "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights").

18

Doe outlined multiple examples of Individual Defendants withholding evidence that Purdue relied on in erroneously expelling Doe.  These examples include, but are not limited to, Individual Defendants "creating a star chamber disciplinary process" that:

a) Barred Doe from reviewing Wright and Rooze's Final Report issued in support of Purdue's "University initiated investigation" of Doe ('Complainant's Concealed Report') even though the Adjudicators based their unlawful expulsion of Doe on Complainant's Concealed Report;

b) Conducted a disciplinary hearing ('Panel Hearing') which prohibited Doe from asking questions of Roe or her witnesses;

c) Expell[ed] Doe based on surrogate and secret testimony contained in the Complainant's Concealed Report without giving Doe the opportunity to question Wright and Rooze about how their evidence was collected, what was left out, and/or bias associated with their representing Purdue's interest in the 'University initiated investigation' of Doe;

d) Allow[ed] Roe, Wright and/or Rooze to provide live testimony to Adjudicators at the Hearing without: (i) telling Doe that Roe, Wright and/or Rooze would be presenting testimony; (ii) allowing Doe to hear Roe, Wright, and Rooze's testimony; or (iii) making a transcript of Roe, Wright, and Rooze's testimony available to Doe;

e) Prohibited Doe from proving Wright and Rooze's initial report excluded exculpatory evidence of Doe's innocence by denying Doe access to Wright and Rooze's audio recordings of their interviews with Doe, Roe, and other witnesses; [and]

f) Eliminat[ed] Doe's ability to defend himself against the 'University initiated investigation' of Doe by prohibiting the audio recording of the Panel Hearing so Doe could use this evidence in his subsequent appeal of his unlawful expulsion . . . ." *Doc.23,* ¶6 (footnotes omitted).

Individual Defendants claim none of these deprivations of Doe's Due Process rights matter because *Park* gives Individual Defendants the right to deprive Doe of them.  *Doc.30,* p.16 (quoting *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828 (7th Cir. 2012).

Individual Defendants' claim fails because they neglected to mention three important facts that disprove their *Park* argument.  First, *Park pre-dates Purdue* which subsequently determined

Individual Defendants violated Doe's Due Process rights if they "with[eld] the evidence on which [Individual Defendants] relied in adjudicating [Doe's] guilt." *Purdue,* 928 F.3d at 663.  Second, *Park* did not involve allegations that a university violated Due Process by using *ex parte* testimony and/or evidence.  Rather, *Park* involved a dismissal from dental school because of a plaintiff's failing grades and acting "unprofessionally by failing to schedule the exam in a timely manner." *Park,* 692 F.3d at 829.

Third, *Park* does not address whether the Due Process clause requires cross-examination in Title IX disciplinary proceedings.  *Park*, 692 F.3d 828.  *Purdue* left the question unanswered by noting:  plaintiff "argues that he was entitled to cross-examine Jane . . . [but since plaintiff]  has otherwise alleged procedural deficiencies sufficient to survive a motion to dismiss, we need not address this issue." *Purdue,* 928 F.3d at 664, fn.4.    But, at least twenty-three courts have determined students like Doe have a right to cross-examination in Title IX disciplinary proceedings involving "he-said she-said" allegations like those in this case.  *See, Baum*, 903 F.3d, 578 (6th Cir. 2018)(holding "if a public university has to choose between competing narratives to resolve a case, the university *must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder*")(emphasis added); *Doe v. N. Mich. Univ.,* No. 2:18-CV-196, 2019 WL 2269721, *5-6 (W.D.Mi. May 28, 2019)(rejecting motion to dismiss Due Process claim even though plaintiff admitted engaging in some non-consensual sexual contact with his accuser Jane Roe in part because "Plaintiff has plausibly argued that he was entitled to some form of cross-examination of Roe" since " [s]ome form of witness questioning before the decision-maker would have allowed [adjudicators] to 'choose between competing narratives' in making its findings."); *Smock v. Bd. of Regents of the Univ. of Mich.* 353 F.Supp.3d 651, 657-58 (E.D. Mich. 2018)(rejecting motion to dismiss procedural Due Process

claims based on university prohibiting plaintiff from cross-examining witnesses in disciplinary proceeding involving allegations of sexual misconduct); *Powell v. Montana State Univ.,* No. 2:17-cv-15 SEH, 2018 WL 6728061, *7 (MT Dec. 21, 2018)(citing lack of cross examination as basis for rejecting university's summary judgment motion to dismiss a Due Process claim because "[i]f a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy Due Process."); *Doe v. the Univ. of Colorado, Boulder,* Civil Case No. 1:18-cv-02243-LTB, 2019 WL 764568, *15 (D. Co. Feb. 21, 2019)(rejecting motion to dismiss Due Process claim because "the lack of a full hearing with cross-examination provides evidence supporting a claim for a violation of [plaintiff's] Due Process rights."); *Doe v. Univ. of Mississippi,* 361 F.Supp.3d 597, 611-13 (S.D. Miss. 2019)(rejecting motion to dismiss Due Process claim based on university prohibiting plaintiff from cross-examining "witnesses whose accounts of the evening led to his discipline."); *Frost v. Univ. of Louisville*, 3:19-CV-227-CRS, 2019 WL 2288453, *12 (W.D. Ky. May 29, 2019) (requiring cross-examination in university sexual misconduct disciplinary proceedings); *Doe v. Rhodes College,* No.2:19-cv-2336-JTF, PageId.256 (W.D. Tenn. June 14, 2019)(unreported and attached in Exhibit 1)(same); *Doe v. Univ. of Cinn.* No.16-4693, 2017 WL 4228791, *5 (6th Cir. Sept. 25, 2017)(finding cross-examination required in certain types of Title IX disciplinary proceedings); *Nokes v. Miami Univ.,* No. 1:17-cv-482, 2017 WL 3674910, *10-12 (S.D.OH. Aug. 25, 2017)(same); *Doe v. Penn. St. Univ.,* No.17-cv-1315, 2017 WL 3581672, *7-8 (M.D.Pa. Aug. 18, 2017)(same); *Doe v. The Penn. State Univ.* No. 4:18-cv-164, Page Id.15-18 of 19, (M.D. Pa. Aug. 21, 2018)(unreported and attached in Exhibit 1)(rejecting university's motion to dismiss male student's Due Process claim based on concerns about lack of meaningful cross-examination); *Oliver v. Univ. of Tx. Southwestern Med. Sch.,* NO. 3:18-CV-1549-B, 2019 WL 536376, *13 (N.D.

21

Tx. Feb. 11, 2019)(rejecting motion to dismiss procedural Due Process claim in part because university did not provide plaintiff with an opportunity to cross-examine plaintiff's accuser in a "live hearing."); *Doe v. Univ. of Southern Mississippi,* No.2:18-cv-153, Docket 35, p.5-7 (S.D.E.D. Miss., Sept. 26, 2018)(unreported and attached in Exhibit 1)(enjoining ongoing sexual misconduct disciplinary proceeding because university violated plaintiff's Due Process rights by denying plaintiff the right to cross-examination); *Jane Roe v. Javaune Adams-Gaton,* Case No. 17-cv-945-EAS-CMV (S.D.E.D. Oh. April 17, 2018)(unreported and attached in Exhibit 1)(enjoining university from imposing Title IX disciplinary sanctions against plaintiff because her procedural Due Process rights were violated since she was unable to cross-examine her accusers and/or adverse witnesses during her university level disciplinary hearing); *Doe v. Univ. of Mich.,* No.2:18-cv-11776-AJT-EAS, PageId.743, 739 (E.D.S.D. Mich. July 6, 2018)(unreported and attached in Exhibit 1)(enjoining disciplinary proceeding because university violated plaintiff's Due Process rights by not providing "the opportunity for a live hearing" where plaintiff could submit cross-examination questions to adjudicators to be asked of witnesses because "[w]ithout a live proceeding, the risk of an erroneous deprivation of [p]laintiff's interest in his reputation, education, and employment is significant."); *Lee v. Univ. of New Mexico,* No.1:17-cv-01230, Doc. 36, p.2-3 (N.M. Sept. 20, 2018)(unreported and attached in Exhibit 1)(rejecting motion to dismiss student's Due Process claim in part because university prohibited him from cross-examining witnesses in "formal or evidentiary hearing"); *Doe v. Marymount Univ.,* 297 F.Supp.3d 573, 584 (E.D.VA. Mar. 14, 2018)(rejecting motion to dismiss Title IX claim at private university in part because private university denied plaintiff right to cross-examine his accuser in Title IX proceeding); *Doe v. University of Southern California,* 28 Cal.App.5th 26 (2018)(granting male plaintiff's writ of administrative mandate because university did not allow cross-examination during Title IX

22

disciplinary proceeding); *Doe v. Claremont McKenna College,* 236 Cal.Rptr.3d 655, 656 (2018)(same); *Doe v. Westmont College,* 34 Cal.App.5th 622 (2019)(same); *Doe v. The Regents of The Univ. of Cali.,* 28 Cal.App.5th 44 (2018)(same); *Doe v. Allee,* 30 Cal.App.5[th] 1036, 1061 (2019)("We also agree with *Baum*'s holding extending the right of cross-examination to the questioning of witnesses other than the complainant where their credibility is critical to the fact-finder's determination.").

Doe's Complaint cited nineteen of these twenty-three decisions as evidence of how Purdue's failure to allow cross-examination violated Doe's Due Process rights. *Doc.23,* ¶152. Defendants asks this Court ignore these decisions because "as the law stands" cross-examination is not mandated. *Doc.30,* p17. However, Defendants forgot to mention *Purdue* left open the question of whether Doe has a Due Process right to cross-examination. *Purdue Univ.,* 928 F.3d at 664, fn.4. As a result, this Court should determine these twenty-three decisions prove Doe can advance a Due Process right violation based on Defendants' preventing Doe from hearing and cross-examining Roe, Wright, and Rooze when they gave *ex parte* testimony to Adjudicators. *Doc.30* pgs.14-15

Such a finding is warranted in part by defects in Defendants' other cross-examination arguments. On one hand, Defendants alleges Doe cannot rely on OCR's 2018 regulations requiring live hearings and cross-examination because these regulations are "proposed (but not enacted)" *Doc.30,* pgs, 4, 15. On the other, Defendants cite OCR's 2018 "proposed" regulations as a basis for disputing Doe's concerns about Defendants' bias driven erroneous finding that Roe and her witnesses were more creditable than Doe and his witnesses. *Id.,* p.16. What is good for the goose should be good for the gander.

This is particularly true here because the live hearing and cross-examination required by OCR's proposed regulations is the best way to avoid the Due Process violations addressed in *Purdue*. For, *Purdue* found adjudicators violated the plaintiff's Due Process rights because they did not *directly* question witnesses with knowledge about "a case that boiled down to a 'he said/she said'" situation. *Purdue*, 928 F.3d at 664. A similar violation occurred here because Doe's Adjudicators never questioned Doe and Roe's many witnesses – some of whom observed Roe performing *consensual* oral sex on Doe. *See generally, Doc.23,* ¶¶6, 108-119.

*Purdue* also determined students' Due Process rights are violated by disciplinary proceedings that suggest a "sham or pretense." *Purdue*, 928 F.3d at 663. The plaintiff in *Purdue* established this type of proceeding because his adjudicators: "decided [plaintiff] was guilty based on the accusation rather than the evidence." *Id.* Doe's disciplinary process was similarly flawed since Doe's Adjudicators bias caused them to make more than a dozen concrete errors in finding that Roe was more creditable than Doe in this "he-said she-said case." *Doc.23,* ¶¶108-119.

In fact, the Individual Defendants' aforementioned Due Process violations are similar to conduct identified in four decisions cited in Doe's Complaint that ruled in favor of male plaintiffs alleging universities subjected them to unlawful sexual misconduct disciplinary proceedings. *Doc.23,* ¶98 (discussing (1) *Penn. St. Univ.,* 2017 WL 3581672 at *10 which granted a preliminary injunction based on Due Process violations because a university investigator improperly: (a) redacted information from her investigative report that "if considered by the ultimate factfinder . . . may have altered their ultimate credibility determinations," and (b) created "a funneling effect whereby information deemed irrelevant by the Investigator, an allegedly neutral party, is thereafter disallowed from submission to the . . . ultimate, and I believe proper, arbiter of both relevance and the accused's fate;" (2) *Doe v. Univ. of Miss.,* No.3:16-cv-63-DPS-FKB, PageId.10-12 of 23

(S.D.N.D. Miss. July 24, 2018)(unreported and attached in Exhibit 1) which rejected a university's motion to dismiss plaintiff's Title IX claims in part because university's investigator omitted exculpatory evidence from investigator's report; (3) *Doe v. The Penn. State Univ.* No.4:18-cv-164, (M.D. Pa. Aug. 21, 2018)(unreported and attached in Exhibit 1) which rejected a university's motion to dismiss male student's Due Process claim because: "Under PSU's Investigative Model, all of the testimony offered in this matter . . . was filtered by Mr. Peters through his Investigative Packet. That testimony appears only in paraphrased form, with virtually no actual quotes, with no indication of how Mr. Peters edited the individuals' statements to him."); *Id.,* ¶103 (discussing *Newsome v. Batavia Local Sch. Dist.* 842 F.2d 920, 927 (6th Cir. 1988) which determined a student/plaintiff was denied Due Process "when the superintendent disclosed to the school board, during [the board's] closed deliberations, new evidence which had not been presented during the open hearing at which [the student-plaintiff] and his attorney were present.").

Moreover, Sermersheim's misconduct exposes her to the Due Process liability she escaped in *Purdue.* *Purdue* determined Sermersheim's "overlapping investigation and adjudication roles" did not trigger a Due Process violation under *Hess* because the plaintiff "did not 'lay a specific foundation of prejudice . . . prejudgment" or "pecuniary interest in the outcome of the case." *Purdue,* 928 F.3d at 665 (quoting *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016)). Here, Doe identified the causal link between Sermersheim's "pecuniary interest in the outcome of the case" and her sex-based stereotyping that caused her "prejudgment" of Doe's guilt. *See e.g.,* pgs.5-6 (discussing same). As a result, Defendants' argument that *Hess* necessitates the dismissal of Doe's Complaint lacks merit. *Doc.30,* p.10 (quoting *Hess,* 839 F.3d, 678).

Defendants' remaining arguments far no better.   For example, Defendants' *Manley* arguments[8] fail because (a) the *Manley* plaintiffs could not establish a "liberty" interest comparable to Doe's liberty interest under *Purdue;*[9] and (b) unlike Doe's federal constitutional claims,[10] *Manley* involved Due Process claims based on state and local laws.   *Manley* 889 F.3d, at 893.

Defendants also incorrectly allege the *summary judgment* decision in *Amaya* proves Doe's Due Process claims must be dismissed because only Indiana state courts can rule on these claims. *Doc.30,* pgs.8, 16 (discussing *Amaya v. Brater,* 993 N.E.2d 311, 319-322 (Ind. Ct. App. 2013)). This is incorrect because the pages of *Amaya* that Defendants cite are *devoid of any* discussion suggesting erroneously disciplined students like Doe *must* file  Due Process lawsuits in state court. *Amaya*, 993 N.E.2d 319-322 (granting summary judgement because plaintiff failed to establish violations of federal and state Due Process rights related to university's discipline of plaintiff for allegedly cheating on an exam).

Similarly, Defendants' claim that Doe seeks an "advisory opinion" like that  in *Dominguez* lacks merit.   *Doc.30,* p.9 (quoting *Dominguez v. Hendley,* 545 F.3d 585 (7th Cir. 2008)). *Dominguez* affirmed a jury verdict in favor of a plaintiff whose §1983 claim alleged he was denied a fair criminal trial.   *Dominguez,* 545 F.3d at 588-89.   In doing so, *Dominguez* rejected defendant's argument that the statute of limitations on plaintiff's §1983 claim tolled from his arrest instead of the date his conviction was vacated.   *Id.,* 589.   Therefore, Defendants' *Dominguez*

---

[8] *Doc.30,* p.7 (quoting *Manley v. Law,* 889 F.3d 885 (7th Cir. 2018).

[9] *Compare, Supra,* §2 (discussing Doe's "liberty interest under Purdue), with *Manley,* 889 F.3d at 891-93 (finding an allegedly "unfair" process and damage to plaintiffs' emotional well-being did not create a "liberty" interest sufficient to defeat motion for summary judgment on plaintiffs' §1983 claim).

[10] *See, Doc.23* (advancing claims based only on U.S. Constitution and Title IX)*.*

arguments must be dismissed because Doe's Due Process claims are authorized by *Purdue* and his §1983 claims are timely. *Supra,* §2 (discussing Doe's "liberty interest under Purdue); *Doc.30* (containing to argument by Defendants that Doe's Due Process claims are time-barred).

Defendants' *Lyons, Simic,* and *O'Shea* arguments[11] fail because Doe seeks the "re-hearing" Defendants insist is required under these Supreme Court decisions. *Doc.23,* ¶¶170, 184, 187 (requesting Individual Defendants (i) reinstate Doe as a student and provide Doe a new disciplinary proceeding free from the bias and constitutional violations addressed in [his] Complaint, and/or (ii) expunge Doe's official and unofficial Purdue files . . . .").

Defendants also incorrectly allege *Schenke* determined only Indiana state courts have jurisdiction to address Doe's placement on Purdue's *Persona Non Grata* list because that placement involved a "law-enforcement determination" made by Purdue University Police. *Doc.30,* p.7, fn.7 (discussing *Schenke v. Phelps,* No. 4:18-CV-87, 2019 WL 2503670 (N.D. Ind. June 17, 2019). This is incorrect because *Schenke* allowed a *pro-se* plaintiff to amend his complaint against Purdue employees because the original complaint was a "bucket of mud" that made it "impossible for the district court" to determine what claims were being pursued. *Schenke,* 2019 WL 2503670, at *3. Additionally, *Schenke* did not rule out the plaintiff reviving what appeared to be a §1983 claim in federal court as long as this claim did not seek monetary damages from Purdue employees prohibited by the Eleventh Amendment. *Id.,* at *4. Defendants' *Schenke* argument also lacks merit because Doe's Complaint is devoid of any discussion about any investigation and/or determination made by the Purdue University Police Department. *See generally, Doc.23-Doc.23*-22.

---

[11] *Doc.30,* p.8 (containing Defendants' arguments based on *City of L.A. v. Lyons,* 461 U.S. 95 (1983); *Simic v. City of Chi.,* 851 F.3d 734 (7th Cir. 2017); *O'Shea v. Littleton,* 414 U.S. 488 (1974)).

27

Based on the law and facts detailed above, Doe requests this Court find Individual Defendants' Gender-Bias and/or Accuser-Favored-Bias violated Doe's Due Process liberty interest by subjecting him to a "sham" disciplinary designed to achieve a guilty finding. Such a finding is warranted in part because there is no dispute that Defendants (a) prohibited Doe from seeing and hearing evidence and testimony the Adjudicators relied on, and (b) denied Doe the ability to cross-examine witnesses who testified against him. *See generally,* pgs.18-23 (discussing same).

**4.   Individual Defendants Are Liable For The Injunctive Relief Doe seeks in Counts 1, 3, and 4**

Defendants incorrectly claim Doe cannot seek injunctive relief for Individual Defendants' violations of Doe's Due Process and Equal Protection rights in Counts 1, 3, and 4. *Doc.30,* pgs.9-10. Individual Defendants are liable for this relief because the Supreme Court determined Eleventh Amendment immunity does not apply to Doe's requests for injunctive relief and/or declaratory judgment. *See e.g.,* Doc.23, ¶168 (discussing *Ex parte Young*, 209 U.S. 123, 150-156 (1908) and *Green v. Mansour*, 474 U.S. 64, 106 S. Ct. 423, 428, (1985) which determined "declaratory relief is within *ex parte Young's* purview when violations of federal law are threatened or ongoing.").

In this case, Doe seeks the following injunctive and/or declaratory relief: "reinstate[ment] as a student . . . a new disciplinary proceeding free from the bias and constitutional violations addressed in [his] Complaint, and/or expunge[ment of] Doe's official and unofficial Purdue files " of any reference to Defendants' disciplinary proceeding. *Doc.23,* ¶¶170, 184, 187. *Purdue* addressed a similar situation by requiring a district court to evaluate whether the plaintiff had a "liberty interest" based on his demand for an "expungement" of Purdue's Title IX disciplinary findings. *Purdue,* 928 F.3d, at 666-67 (discussing "*Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (pursuing expungement of university records 'serve[s] the purpose of preventing present and future harm'); *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (seeking to 'remove

the negative notation from appellants' disciplinary records' is 'nothing more than prospective remedial action'); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (an 'F' grade and a plagiarism conviction 'constitute[d] a continuing injury to the plaintiff' and an action to remove them was 'prospective in nature')."

The rejection of Individual Defendants' Eleventh Amendment arguments are also necessary here because they admit the injunctive and declaratory relief Doe seeks is based on their official capacity and that Doe does not seek monetary damages from them.  *Doc.30,* pgs.3, 20.  As a result,  the law and facts before this Court disprove Defendants' claim that the following six decisions mandate the dismissal of Doe's Due Process claims on Eleventh Amendment grounds: *Kashani, Wasserman, Gaff, Council 31, Calderon*, and *Graham*.  *See generally, Doc.30,* pgs.6, 21 (discussing *Kashani v. Purdue Univ.,* 813 F.2d 843(7th Cir. 1987); *Wasserman v. Purdue Univ. ex rel. Jischke,* 431 F. Supp. 2d 911 (N.D. Ind. 2006); *Gaff v. Indiana-Purdue Univ. of Ft. Wayne,* 45 N.E.3d 458 (Ind. Ct. App. 2015) *aff'd in part, vac'd in part* 51 N.E.3d 1163 (Ind. 2016); *Council 31 of the Am. Fed'n of State, Cty. and Mun. Emps., AFL-CIO v. Quinn,* 680 F.3d 875 (7th Cir. 2012); *Calderon v. Ashmus,* 523 U.S. 740 (1998); and *Kentucky v. Graham,* 473 U.S. 159 (1985)).

*Gaff, Council 31, Graham*, and *Calderon* are not relevant here because the plaintiffs in these cases either (a) did not seek injunctive relief; (b) sought injunctive relief involving monetary compensation; (c) did not bring claims against state officials in their "official capacity;" or (d) sought a declaratory judgment ruling related to a state's anticipated defense in future habeas proceedings.  *Gaff,* 45 N.E.3d, at 463, fn.5 (addressing disputes that did not involve requests for injunctive relief); *Council 31,* 680 F.3d, at 883-84 (finding Eleventh Amendment precluded injunctive relief involving payments from a state's treasury); *Graham,* 473 U.S., at 159 (addressing dispute involving claims against state officials in their personal-capacity and not their official-

capacity); *Calderon,* 523 U.S., at 748-749 (finding no Article III jurisdiction to render declaratory judgment ruling related to a state's anticipated defense in future habeas  proceedings).

     *Kashani* and *Wasserman* are distinguishable because they determined the Eleventh Amendment prohibited <u>*only*</u> claims for monetary damages and <u>*not*</u> Doe's claims that seek non-monetary injunctive relief based on official capacity status.  *Kashani,* 813 F.2d, at 844-845; *Wasserman,* 431 F. Supp. 2d, at 916.  Defendants also incorrectly allege the injunctive relief Doe seeks is prohibited by the Supreme Court's *Already, LLC*  and *Lujan* decisions.  *Doc.30,* p.8 (discussing *Already, LLC v. Nike, Inc.,* 568 U.S. 85 (2013) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

     Specially, Defendants claim Doe's Complaint does not plausibly establish the  "'concrete' and 'actual' injury necessary to establish Article III standing'" under *Already, LLC.  Id.,* p.8 (quoting *Already, LLC,* 568 U.S., 97).  Defendants also claim this Court would engage in the "'conjectural or hypothetical' speculation" prohibited by *Already, LLC* if it evaluated the merits of Doe's Due Process rights.  *Id.*  Nothing could be further from the truth.  Doe's Complaint plausibly sets forth facts that establishes a violation of his liberty interests and Due Process rights under *Purdue.  Infra,* §2-3(a) (discussing same).  These facts are the type of "concrete and actual" injuries that  establish Article III standing under *Already, LLC.* and  *Lujan.*  This is partly because Doe's factual allegations are highly distinguishable from *Already, LLC* which determined a shoe manufacturer could not establish Article III standing because it (a) advanced arguments based on concerns about a future lawsuit which the record proved would not likely occur; and (b) did not allege any "infringe[ment] any of its property rights"  *Already, LLC,* 568 U.S., at 97-100.

     Finally, Defendants argue Doe is not entitled to *Ex Parte Young* relieve because he cannot prove Individual Defendants would participate in any new disciplinary proceeding ordered by this

Court. *Doc.30*, p.10. This argument fails in part because Purdue's policies explicitly contemplate the participation of some of the Individual Defendants in any new proceeding ordered by this Court. *See e.g., Doc.23,* ¶¶83-84 *Doc.23-13, Doc.23-17* (detailing how Purdue's Policies identify Sermersheim as the person who: (a) determines whether to impose interim disciplinary sanctions against students accused of sexual misconduct; (b) appoints investigators like Wright and Rooze to investigate Title IX allegations; and (c) appoints individuals like the Adjudicators to advise Sermersheim when she renders final appealable disciplinary orders); *Doc.23* ¶124; *Doc.23-19; Doc23-16,* p.32 (detailing how Purdue's Policies identify Rollock as the person responsible for rendering determinations on Sermersheim's final appealable disciplinary orders in Title IX proceedings).

Based on the aforementioned law and facts, Doe requests this Court find Doe's requests for *Ex-Parte Young* relief cannot be dismissed.


5. **Defendants' Motion To Dismiss Lacks Merit Because It is Based on Claims Not Contained In Doe's Complaint**

Defendants' motion to dismiss should be rejected because it is based on allegations that Doe makes five arguments that he did not make. First, Defendants allege Doe's "state-law claims" fail because he cannot establish proper diversity and/or supplemental jurisdiction. *Doc.30,* p.6. This argument fail since Doe makes no state-law claims. *See generally, Doc.23.*

Second, Individual Defendants allege Doe's §1983 claims must be dismissed because Doe seeks impermissible "damages" based on their official and/or individual capacities. These claims lack merit because Defendants repeatedly admit Doe is not seeking "damages" based on the Individual Defendants' *individual* capacities. *Doc.30,* pgs.3, 20 (citing ¶171 of Doe's Amended Complaint which states: ". . . . Doe does not seek to hold Individual Defendants liable in their

'individual-capacity' because subsequent to Doe filing his compliant the Seventh Circuit noted its June 2019 decision in *Doe v. Purdue Univ.*  was its  'first case addressing whether university discipline deprives a student of a *liberty* interest . . . [and therefore] the relevant legal rule was not 'clearly established,' and a reasonable university officer would not have known at the time of John's proceeding that her actions violated the Fourteenth Amendment.' *Id.*, 665 (7th Cir. 2019)").

Defendants also quote portions of Doe's Complaint that note his §1983 claims are filed *only* "Against Individual Defendants" and not Purdue. *Doc.30,* p.3, fn.1; p.10. fn.11. This acknowledgment disproves Defendants' third argument which alleges Doe's §1983 claims were filed against Purdue which is precluded by law from being a "defendant" in §1983 claims. *Id.,* pgs.2, 20-21.

Fourth, Defendants claim Doe's §1983 claims are based on him *not* being provided "a hearing prior to his *interim* suspension." *Id.,* p.15 (emphasis added).  Although Doe did not receive such a hearing,[12] Doe's §1983 claims are *not* based on Defendants' failure to provide an interim suspension hearing.  *See generally, Doc.23.*  Consequently, Defendants' *Medlock* based interim suspension argument is irrelevant to the issues before this Court.  *Doc.30,* p.15-16 (discussing *Medlock v. Trs. of Ind. Univ.*, 738 F.3d 867 (7th Cir. 2013).

Finally, Defendants alleges Doe's §1983 claims are based allegations that "finders of fact in a university disciplinary proceeding are forbidden from making credibility assessments when weighing the evidence." *Id.,* p.16.  Doe makes no such claim.  Rather, Doe detailed how the Adjudicator's  Gender-Bias and/or Accuser-Favored-Bias caused them to make more than a dozen concrete errors in finding that Roe was more creditable than Doe in this "he-said she-said case." *Doc.23,* ¶¶108-119.

---

[12] *Doc.23*, ¶¶83-43 (discussing Doe's interim suspension).

6. **Conclusion**

Based on the factual and legal positions detailed above, Doe respectfully requests this Court reject Defendants' Motion To Dismiss.  To do otherwise, would prohibit students of Indiana's public institutions from seeking legal recourse when universities unlawfully label them sex offenders in violation of the United States Constitution.

Respectfully Submitted,

/s/ Eric J. Rosenberg
Eric J. Rosenberg (Ohio Bar No. 0069958)
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
740.644.1027 phone
866.498.0811 fax
erosenberg@rosenbergball.com

**Certificate of Service**

I certify that on October 2nd, 2019, I filed this court filing with the Clerk of Court using the CM/ECF system which will send notification of the filing to all registered parties.

/s/ Eric Rosenberg