UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | |
| v. | CAUSE NO.: 4:19-CV-56-TLS-JPK |
| PURDUE UNIVERSITY, *et al.*, | |
| Defendants. | |

OPINION AND ORDER

On August 9, 2019, Plaintiff John Doe filed an Amended Complaint [ECF No. 23] against Purdue University, Vice President Alysa C. Rollock, Dean Katherine L. Sermersheim, Senior Associate Director Christie Wright, Investigator Jeff Rooze, and yet to be identified individuals who served on a disciplinary panel. Am. Compl., p. 1, ECF No. 23. In essence, the Plaintiff alleges that (1) he was discriminated against on the basis of sex during a university investigation that resulted in his expulsion and (2) the disciplinary process violated his right to due process. Accordingly, the Plaintiff brings claims for violations of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Count 1); violations of Title IX of the Educational Amendments of 1972 (Count 2); violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Count 3); and a declaratory judgment that Purdue University's policies, as applied to the Plaintiff, violate the Due Process Clause of the Fourteenth Amendment (Count 4). *Id.* pp. 51–66.

This matter is before the Court on the Defendants' Renewed Motion to Dismiss [ECF No. 29], filed on August 30, 2019. The Defendants argue (1) this Court is without jurisdiction, (2) the Plaintiff failed to state a due process violation, (3) the Plaintiff failed to exhaust his state law remedies, (4) the Plaintiff failed to state an equal protection claim, and (5) the Plaintiff's § 1983

claims must be dismissed as a matter of law. The Court concludes that the Plaintiff's claims for economic damages pursuant to 42 U.S.C. § 1983 must be dismissed. However, in all other respects, the Defendants' arguments are denied. Therefore, the Defendants' Renewed Motion to Dismiss [ECF No. 29] is granted in part and denied in part.

## LEGAL STANDARD

"A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and accepts as true all reasonable inferences that may be drawn from the allegations. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bonnstetter*, 811 F.3d at 973 (citing *Twombly*, 550 U.S. at 555).

## BACKGROUND

### A.      The Sexual Contact Between the Plaintiff and Jane Roe

In August 2018, the Plaintiff and Jane Roe became acquainted with each other on a social media app. Am. Compl. ¶ 22, ECF No. 23. On August 16, 2018, the Plaintiff invited Jane Roe to a party. *Id.* ¶¶ 23–24. Jane Roe arrived at the party with her friend. *Id.* ¶ 24. Around 11:30 P.M.,

Jane Roe and her friends decided to leave for another party. *Id.* ¶ 25. Jane Roe asked the Plaintiff whether he would like to join them, and he agreed to leave with them. *Id.*

At the second party, the Plaintiff and Jane Roe danced and kissed. *Id.* The Plaintiff asked Jane Roe whether she wanted to go somewhere "more private." *Id.* ¶ 26. Jane Roe agreed, and they found an overstuffed chair away from the dancing area of the party. *Id.* Jane Roe straddled the Plaintiff's lap and continued to kiss him while the Plaintiff consensually touched Jane Roe's vagina. *Id.*

As the second party ended, the Plaintiff, Jane Roe, and various other students decided to return to the Purdue University campus. *Id.* ¶ 29. At some point, Jane Roe asked the Plaintiff whether he would like to come up to her dorm room. *Id.* ¶ 30. At the dorm room, the Plaintiff and Jane Roe began kissing. *Id.* ¶ 31. Jane Roe then removed her shirt and bra and performed oral sex on the Plaintiff. *Id.* The Plaintiff manually stimulated Jane Roe's vagina. *Id.* ¶ 36. After a few minutes, Jane Roe stopped performing oral sex. *Id.* The Plaintiff and Jane Roe agreed to stop engaging in sexual contact. *Id.* The Plaintiff then left her room without engaging in any further sexual contact. *Id.* ¶ 37.

## B.  Purdue University's Investigation

After August 16, 2018, Jane Roe falsely alleged that the Plaintiff sexually assaulted her.[1] *Id.* ¶ 38. Ultimately, a resident advisor at Purdue University learned of her false allegations and reported the Plaintiff to Purdue University. *Id.* ¶ 39.

On August 28, 2018, Purdue University's Office of Institutional Equity instituted an investigation against the Plaintiff. *Id.* ¶ 82. The Plaintiff was summarily suspended from the

---

[1] As explained above, the Court must view the allegations in the complaint within the light most favorable to the Plaintiff. As such, this Opinion and Order should not be construed as an endorsement or critique of either students' version of events.

3

university pending an investigation of Jane Roe's allegations. *Id.* ¶ 83. Purdue University explained that it had been informed of conduct that, if substantiated, may constitute a violation of university policy. Ex. 13, Suspension Letter, p. 3, ECF No. 23-13.[2] Namely, Purdue University alleged that on August 16, 2018, the Plaintiff became aggressive at a party and digitally penetrated Jane Roe's vagina without consent. *Id.* It further alleged that the Plaintiff returned to Jane Roe' dorm room and "sexually assaulted [her] by forcing her to perform oral sex . . . , inserting [his] finger(s) into her vagina, inserting [his] finger(s) into her anus, and attempting to insert [his] penis into her vagina, all without her consent." *Id.* It was further alleged that the Plaintiff bit and strangled Jane Roe. *Id.*

On August 30, 2018, the Plaintiff learned that Defendant Christie Wright and Defendant Jeff Rooze were investigating Jane Roe's allegations. Am. Compl. ¶ 85, ECF No. 23. Defendant Wright requested an interview with the Plaintiff. *Id.* During the interview, Defendants Wright and Rooze were uninterested in any exculpatory evidence. *Id.* ¶ 86. Rather, Defendants Wright and Rooze were interested in supporting Jane Roe's allegations. *Id.* Defendants Wright and Rooze rejected the Plaintiff's request to observe security camera film which would have undermined the credibility of Jane Roe and other witnesses. *Id.* Defendants Wright and Rooze also refused to provide the Plaintiff with exculpatory evidence such as the audio recordings of the interviews with Jane Roe and other witnesses. *Id.* ¶ 87.

Some point thereafter, Defendants Wright and Rooze issued a "Preliminary Report." *Id.* ¶ 87. Purdue University denied the Plaintiff's repeated requests for a copy of the Preliminary Report. *Id.* Purdue University also denied the Plaintiff's requests for copies of the audio

---

[2] *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]e have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

recordings, documents, and other information gathered during the investigation. *Id.* Instead, Purdue University only allowed the Plaintiff to review a copy of the Preliminary Report from a secure location. *Id.* ¶ 88. The Plaintiff took handwritten notes regarding the information in the Preliminary Report. *Id.* ¶ 89. Thereafter, Defendants Wright and Rooze submitted the Preliminary Report to administrators at Purdue University. *See id.* ¶ 90. However, these Defendants refused to include exculpatory evidence within the Preliminary Report. *Id.* ¶ 87.

On December 11, 2018, the Plaintiff submitted a "Response" to the Preliminary Report. *Id.* In his Response, the Plaintiff disputed Jane Roe's version of events and highlighted inconsistencies in her story. *See* Response to Preliminary Investigators Report, pp. 1–4, ECF No. 23-21. After the Plaintiff presented his Response, Defendants Wright and Rooze prepared a "Concealed Report" that was submitted to a Panel of Adjudicators tasked with determining whether the Plaintiff violated university policy. *See* Am. Compl. ¶ 90, ECF No 23. The Defendants did not allow the Plaintiff to view the Concealed Report. *Id.* ¶¶ 90, 97.

## C.     The Disciplinary Hearing

On December 18, 2018, the Plaintiff received a letter from Defendant Katherine L. Sermersheim. *Id.* ¶ 91. Defendant Sermersheim, who is the Associate Vice Provost and Dean of Students, stated that a "Formal Resolution Process" was scheduled for December 21, 2018. *Id.* The letter stated that the Plaintiff may have a support person present during the hearing, but that this support person could not act as legal counsel or otherwise participate in the hearing. *Id.* The letter informed the Plaintiff that he would be given "a few minutes if there are any remarks you wish to share with us, and then I will open it up to the panel members and myself for questions we have for you." *Id.* The letter cautioned that the Panel had "reviewed the complaint, written responses, and the Investigator's Report. Accordingly, the purpose of the meeting is not to

conduct another investigation but simply to be able to hear directly from the parties and get clarification on any questions we might have after having reviewed the written materials." *Id.*

On December 21, 2018, Defendant Katherine L. Sermersheim convened a Panel from the Advisory Committee on Equity to determine whether the Plaintiff violated university policy. *Id.*; *see also* Ex. 17, Final Determination, p. 3, ECF No. 23-17. The only witnesses were Defendant Wright, Defendant Rooze, the Plaintiff, and Jane Roe. *See* Am Compl. ¶¶ 6, 93, 99, ECF No. 23. The Defendants prohibited the Plaintiff from listening to Jane Roe's testimony. *Id.* ¶ 93. Likewise, the Defendants prohibited the Plaintiff from cross-examining or questioning Jane Roe. *Id.* The Plaintiff was prohibited from listening to or cross-examining the testimony from Defendants Wright and Rooze. *Id.* ¶ 99. The Plaintiff alleges that his Response was not provided to the Panel. *Id.* ¶ 96. The Plaintiff also alleges that Defendants Wright and Rooze did not incorporate any of the exculpatory evidence into the Concealed Report. *Id.* ¶ 97.

During the hearing, the Panel did not inquire about any of the exculpatory evidence. *Id.* The Plaintiff alleges that the Panel did not question Jane Roe about the exculpatory evidence or the inconsistencies in her story. *Id.* ¶ 102. During the hearing, Defendant Sermersheim posed numerous questions and comments based upon sex-based stereotypes. *Id.* ¶ 104. Likewise, an unknown panel member also made comments based upon sex-based stereotypes. *Id.* ¶ 107. Furthermore, the Panel did not ask the Plaintiff about the exculpatory evidence. *Id.*

Later that day, the Panel issued a final determination. Ex. 17, Final Determination, p. 2, ECF No. 23-17. The Panel found that Jane Roe's testimony was credible. *Id.* at 3. The Panel found that the Plaintiff was not credible. *Id.* Based upon this credibility determination, the Panel found by a preponderance of the evidence that the Plaintiff had violated university policy prohibiting sexual misconduct. *Id.* at 7. Specifically, the Panel found that the Plaintiff engaged in

non-consensual sexual contact with Jane Roe during the second party and in her dorm room. *Id.*
at 4–7. As a result, the Plaintiff was (1) expelled from Purdue University, (2) permanently barred
from future employment with Purdue University, and (3) prohibited from entering Purdue
University property. *Id.* at 7.

**D.     The Appeal to Purdue University's Administration**

On December 21, 2018, the Plaintiff appealed his suspension to Defendant Alysa C.
Rollock, who is the Vice President for Ethics and Compliance. Am. Compl. ¶ 124, ECF No. 23.
During his appeal, the Plaintiff argued that the Panel's credibility determination was erroneous
because Jane Roe's version of events was inconsistent and contradicted by several bystanders.
*See* Appeal of Final Determination, p. 1, ECF No. 23-18. The Plaintiff also argued that the Panel
was biased and violated Purdue University's regulations governing disciplinary proceedings. *Id.*
at 1–2. Accordingly, the Plaintiff requested that his expulsion be reversed. *Id.* at 2.

On January 3, 2019, the Panel was affirmed in part and reversed in part. Am. Compl. ¶
124, ECF No. 23. Defendant Rollock reversed the Panel's finding of fact as it related to the
sexual assault that allegedly occurred at the party. *See* Appeal Determination, p. 1, ECF No. 23-
19. However, Defendant Rollock affirmed the Panel as it related to the sexual assault that
allegedly occurred in Jane Roe's dorm room. *Id.* Defendant Rollock affirmed the sanctions that
the Panel imposed upon the Plaintiff. *Id.*

**E.     The Plaintiff's Suspension and Alleged Damages**

Defendant Rollock's decision altered the Plaintiff's legal status at Purdue University. *See*
Am. Comp. ¶ 125, ECF No. 23. Namely, Defendant Rollock affirmed the Panel's decision that
(1) expelled the Plaintiff from Purdue University, (2) permanently barred the Plaintiff from
future employment with Purdue University, and (3) prohibited the Plaintiff from entering Purdue

7

University. *See id.* As a result of his expulsion, the Plaintiff's transcripts will permanently include the following reprimand: "STUDENT EXPELLED . . . DUE TO VIOLATIONS OF UNIVERSITY REGULATIONS." *Id.* ¶ 127. Following his undergraduate education, the Plaintiff desires to attend law school or business school. *Id.* ¶ 160. The Plaintiff's chosen occupation is to work either as an attorney or a financial professional. *Id.* ¶ 161. However, the Plaintiff will have a legal obligation to disclose the disciplinary proceeding to graduate schools and licensing boards. *Id.* Because of this, it will be nearly impossible for the Plaintiff to obtain the necessary educational and licensing qualifications for his chosen profession. *Id.* ¶ 163.

## F.    The Pressure on Purdue University and the Bias Against Male Students

Purdue University was under immense pressure to adjudicate claims of sexual assault in favor of women. *See id.* ¶¶ 40–78. For example, in December 2017, a female student filed a lawsuit alleging that Purdue University violated her Title IX rights by manifesting bias against females who alleged that males engaged in sexual misconduct. *Id.* ¶ 41. Purdue University received negative publicity from this lawsuit. *Id.* ¶ 43. Likewise, in September 2018, another female student sued Purdue University for failing to protect her and other female students from sexual misconduct. *Id.* ¶ 45. Purdue University received negative publicity for its handling of the events giving rise to the September 2018 lawsuit. *Id.* ¶ 47. Further, in November 2018, two female students sued Purdue University after they were disciplined for accusing male students of engaging in sexual misconduct. *Id.* ¶¶ 48–49. Purdue University received negative publicity for the events giving rise to the November 2018 lawsuit. *Id.* ¶ 50. Purdue University was also pressured by various campus protests. *Id.* ¶¶ 51–52, 72–74. Purdue University also received negative media coverage for various sexual assaults that occurred on campus. *Id.* ¶¶ 53–54. Purdue University was also investigated by the United States Department of Education's Office

of Civil Rights for allegedly failing to properly and equitably respond to complaints, reports, and incidents of sexual violence perpetrated by male students. *Id.* ¶ 58. Other similar investigations were also conducted against Purdue University. *Id.* ¶¶ 56–57, 59. These investigations cause significant financial stress because the Office of Civil Rights can impose civil penalties and suspend academic institutions from participating in federal student financial aid programs. *Id.* ¶ 65.

The Plaintiff alleges that these pressures caused the Defendants to discriminate against him on the basis of gender. *See id.* ¶¶ 47–56. The Plaintiff alleges that the Defendants would prosecute "University Initiated Complaints" against male students even if the alleged victim did not file a complaint. *Id.* ¶ 74. However, the Defendants would not initiate disciplinary proceedings against female students unless the alleged victim filed a formal complaint. *Id.* Further, similarly situated female students who have been accused of sexual misconduct were either not charged with violating university policy or were penalized to a lesser degree than similarly situated male students. *Id.* ¶ 75.

## ANALYSIS

The Defendants argue (1) this Court is without jurisdiction, (2) the Plaintiff failed to state a due process violation, (3) the Plaintiff failed to exhaust his state law remedies, (4) the Plaintiff failed to state an equal protection claim, and (5) the Plaintiff's § 1983 claims must be dismissed as a matter of law. The Court concludes that the Plaintiff's claims for economic damages pursuant to 42 U.S.C. § 1983 must be dismissed. However, in all other respects, the Defendants' arguments are denied. Therefore, the Defendants' Renewed Motion to Dismiss [ECF No. 29] is granted in part and denied in part.

## A.    Jurisdiction

The Defendants argue that this Court is without jurisdiction. Specifically, the Defendants argue that (1) there is no federal question jurisdiction, (2) the Plaintiff does not have standing, and (3) the Plaintiff's case is unripe. The Court disagrees.

### 1.    Federal Question Jurisdiction

The Defendants argue that "there is no federal-question jurisdiction to decide whether [the Plaintiff's] sexual contact with Jane Roe was consensual." Defs.' Br. in Supp. of Renewed Mot. to Dismiss, p. 2, ECF No. 30. The Court concludes that there is federal question jurisdiction because the Plaintiff's claims arise under federal law.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Evergreen Square of Cudahy v. Wis. Hous. and Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013)). "When it comes to invoking federal question jurisdiction, the bar is low. . . . Even if the federal claim fails to state a cause of action, the district court retains jurisdiction to say so." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 681 (7th Cir. 2014) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

In this case, all of the Plaintiff's claims arise under federal law. Specifically, the Plaintiff alleged that the Defendants violated the Due Process Clause of the Fourteenth Amendment (Count 1); violated Title IX of the Educational Amendments of 1972 (Count 2); violated the Equal Protection Clause of the Fourteenth Amendment (Count 3); and that Purdue University's policies, as applied to the Plaintiff, violate the Due Process Clause of the Fourteenth Amendment (Count 4). Am. Compl. pp. 51–56, ECF No. 23. Certainly, such allegations arise "under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As such, there is federal

question jurisdiction. *Id.* Furthermore, notwithstanding the Defendants' argument to the contrary,

the Court need not decide whether the contact between the Plaintiff and Jane Roe was

consensual. Rather, the Court is tasked with determining whether the Plaintiff stated a claim for a

violation of his rights under the Constitution and laws of the United States. As such, this

jurisdictional argument is without merit.

**2.      *Standing***

        The Defendants argue that the Plaintiff lacks standing. "Article III of the Constitution

limits the power of federal courts to deciding 'cases' and 'controversies.'" *Bria Health Servs.,*

*LLC v. Eagleson*, 950 F.3d 378, 382 (7th Cir. 2020) (quoting U.S. Const. art. III, § 2)). To meet

this requirement, a plaintiff must establish that he has standing. *Id.* To establish standing, a

plaintiff "must allege and prove (1) a concrete and particularized injury, (2) caused by the actions

of the defendant, (3) that would likely be redressed by a favorable decision." *Id.* (citing *Lujan v.*

*Defenders of Wildlife*¸ 504 U.S. 555, 560–61 (1992)); *see also Freedom From Religion Found.,*

*Inc. v. Obama*, 641 F.3d 803, 805 (7th Cir. 2011). An injury is "an invasion of a legally protected

interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Causation

is established when an injury is fairly traceable to the challenged action of the defendant and is

not the result of the independent action of a third party that is not before the court. *Id.* (quoting

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). An injury is redressable when

it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Id.* at 561 (internal quotation marks omitted).

In this case, the Plaintiff has standing. *See John Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019) (concluding that a university student who sought to expunge his record of a disciplinary proceeding had standing to bring his suit).[3] It is undisputed that the Plaintiff was expelled from Purdue University. It is also undisputed that the Defendants caused his expulsion. Specifically, Defendants Wright and Rooze investigated the sexual encounter between the Plaintiff and Jane Roe. Defendant Sermersheim convened a three-member Panel which ultimately determined that the Plaintiff violated university policy. Based upon this finding, the Plaintiff was expelled from Purdue University. Further, Defendant Rollock rejected the Plaintiff's administrative appeal and affirmed the suspension. When viewed in the light most favorable to the Plaintiff, it is likely that the injury will be redressed by a favorable decision. Namely, the Plaintiff is requesting injunctive relief so that he can (1) be reinstated as a student at Purdue University and (2) expunge his transcripts of the reference to violating university policy. *See* Am. Compl. ¶ 170, ECF No. 23. Therefore, the Plaintiff has standing to bring his suit.

## 3.    *Ripeness*

The Defendants argue that the Plaintiff's claims are unripe. "Article III of the U.S. Constitution limits the authority of the federal courts to 'cases or controversies.'" *Rock Energy Coop. v. Vill. of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010) (quoting *Smith v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994)). "The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems." *The Church of Our Lord and Savior Jesus Christ v. City of Markham, Ill.*, 913 F.3d 670, 676 (7th Cir. 2019) (citing *Wis. Right of Life State*

---

[3] Note: this was a different student at Purdue University. Although factually similar, the case of *John Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019), is not directly connected with this case. Also, when doing so improves readability, the Court will refer to this case by its long form citation.

*Political Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011)). "Cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) (quoting *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992)).

In this case, the Plaintiff seeks relief in the form of monetary damages and injunctive relief. Regarding the latter, the Plaintiff seeks reinstatement and a new disciplinary hearing at Purdue University. Based upon this, the Defendants argue that, "[u]nless and until [the Plaintiff] wins a rehearing and succeeds in such a hearing, his Title IX damage claim and Title IX reinstatement claim are unripe and must be dismissed for lack of subject-matter jurisdiction." Defs.' Br. in Supp. of Renewed Mot. to Dismiss, p. 9, ECF No. 30. The Defendants argue that the only ripe claim is the Plaintiff's request for a rehearing pursuant to Title IX. *Id.* at 8.[4]

However, the Defendants fail to cite any caselaw that specifically holds that a claim for damages is unripe unless and until an administrative rehearing results in a plaintiff's favor. *See United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) (the parties, rather than the court, must research and construct available legal arguments). Moreover, in *John Doe v. Purdue University*, 928 F.3d 652, 656 (7th Cir. 2019), a male student was suspended after he was found guilty of sexual misconduct against a female student. The male student, who alleged that he was discriminated against on the basis of gender, brought a Title IX claim against the university. *Id.* Further, the Plaintiff's Title IX claim included a request for monetary damages. *Id.* at 670. Ultimately, the Seventh Circuit concluded that the student stated a claim for a violation of Title IX. *Id.* at 669–70. The Seventh Circuit did not conclude, for example, that the Plaintiff's claim for damages was unripe. *See id.*; *see also Home Builders Ass'n of Greater Chi. v. U.S. Army*

---

[4] The Defendants do not argue that the Plaintiff fails to state a claim for gender discrimination under Title IX.

*Corps of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003) (noting that the question of ripeness may be considered sua sponte). Thus, the Defendants' ripeness argument is contradicted by Seventh Circuit caselaw.

Further, notwithstanding the implicit reasoning of *Doe*, the Court concludes that the Plaintiff's request for damages and injunctive relief are ripe. Namely, the Plaintiff has *actually* been suspended from Purdue University and has incurred damages as a result. The disputes in this case are not hypothetical, speculative, or illusory. Thus, the Plaintiff's claims are ripe for adjudication.

**B.      The Due Process Claim**

The Plaintiff argues that his due process rights were violated during the disciplinary proceedings. The Defendants argue that this claim fails because (1) the Plaintiff failed to demonstrate a protected liberty interest and (2) his right to due process was not violated. The Court disagrees.

"The Due Process Clause of the Fourteenth Amendment forbids a state to deprive any person of 'life, liberty, or property, without due process of law.'" *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (quoting U.S. Const. amend. XIV, § 1). "To maintain such an action, a plaintiff must establish that a state actor has deprived him of a constitutionally protected liberty or property interest without due process of law." *Doyle v. Camelot Car Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Mason v. Sybinski*, 280 F.3d 788, 794 (7th Cir. 2002)); *see also Dupuy*, 397 F.3d at 503. As such, courts engage in a two-part analysis: first, the court determines whether the plaintiff was deprived of a protected interest; second, the court determines what process was due under the circumstances. *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016) (citing *Charleston v. Bd. of Trs. of the*

14

*Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013); *Pugel v. Bd. of Trs. of the Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004)).

### 1.      *Protected Liberty Interest*

The Plaintiff had a protected liberty interest in his future career as an attorney or financial professional. "It is well-settled that an individual has no cognizable liberty interest in his reputation; consequently, when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated." *Doyle*, 305 F.3d at 617 (citing *Paul v. Davis*, 424 U.S. 693, 711–12 (1976); *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)). "In order for state action that injures one's reputation to implicate the Due Process Clause, the action must also alter one's legal status or rights." *Schepers v. Comm'r, Ind. Dep't of Corr.*, 691 F.3d 909, 914 (7th Cir. 2012). "The need to show alteration of legal status along with some stigmatic or reputation injury is commonly referred to as the 'stigma plus test.'" *Id.* (quoting *Khan v. Bland*, 630 F.3d 519, 534 (7th Cir. 2010)).

In *John Doe v. Purdue University*, 928 F.3d 652, 656 (7th Cir. 2019), the plaintiff was suspended after the defendants found him guilty of sexual misconduct against a female student. As a result, the plaintiff was expelled from the Navy ROTC program and lost his ROTC scholarship. *Id.* On appeal, the plaintiff argued that Purdue University deprived him of a protected liberty interest of pursuing a naval career. *Id.* at 661. The Plaintiff also alleged that he had a legal obligation to disclose the disciplinary proceeding to the Navy. *Id.* at 661–62. Ultimately, the Seventh Circuit agreed with the plaintiff and held as follows:

> John's situation is . . . not a matter of state-spread rumors or an investigation that was ultimately dropped. After conducting an adjudicatory proceeding, Purdue formally determined that John was guilty of a sexual offense. That determination changed John's status: he went from a full-time student in good standing to one suspended for an academic year. And it was this official determination of guilt, not the preceding charges or any accompanying rumors, that allegedly deprived John

15

of occupational liberty. It caused his expulsion from the Navy ROTC program (with the accompanying loss of scholarship) and foreclosed the possibility of his re-enrollment in it. John has satisfied the "stigma plus" test.

*Id.* at 662–63 (internal citations omitted).

In this case, it is undisputed that the Defendants formally determined that the Plaintiff was guilty of engaging in sexual activity that violated university policy. As a result, the Plaintiff was (1) expelled from Purdue University, (2) permanently barred from future employment with Purdue University, and (3) prohibited from entering Purdue University. *See id.* Thus, the Plaintiff's legal status has been altered. *See Doe*, 928 F.3d at 662.

Furthermore, the Plaintiff states that his chosen occupation is to be an attorney or a financial professional. *See* Am. Compl. ¶ 160, ECF No. 23. The Plaintiff alleges that these occupations trigger a legal obligation to disclose the disciplinary proceedings to graduate schools and licensing boards. *Id.* Based upon this obligation to disclose, the Plaintiff alleges that "it would be virtually impossible for [him] to enroll in a law school or graduate school" because universities "routinely reject applications of students who disclose sexual misconduct disciplinary findings in applications for admissions." *Id.* ¶ 163. The Plaintiff also alleges that it will be "virtually impossible" for him to obtain the necessary licensing credentials due to his obligation to disclose. *Id.* ¶ 161; *see also* Decl. of Cynthia Purcell Garrett in Supp. of Pl.'s Am. Compl., ECF No. 23-22. Viewed in the light most favorable to the nonmoving party, the Plaintiff has demonstrated that his duty to disclose has foreclosed his chosen occupation. *See Doe*, 928 F.3d at 662–63. Thus, the Plaintiff has satisfied the stigma plus test.

## 2. *The Required Due Process*

The Plaintiff has stated a claim for a due process violation. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a

meaningful manner.'" *Carmody v. Bd. of Trs. of the Univ. of Ill.*, 747 F.3d 470, 474 (7th Cir. 2014) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "Due process is a flexible concept that 'calls for such procedural protections as the particular situation demands.'" *Pugel*, 378 F.3d at 662 (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)). In a university disciplinary proceeding, the process due depends on a number of factors including the severity of the offense. *Doe*, 928 F.3d at 663. "Where students are suspended from school for only brief periods of time—*i.e.*, for ten days or fewer—due process requires only minimal safeguards: notice of the charges asserted against the student, and, if he denies them, an explanation of the evidence and an opportunity for the student to present his side of the story." *Hess*, 839 F.3d at 673 (citing *Goss v. Lopez*, 419 U.S. 565, 581, 584 (1975)).

In *John Doe v. Purdue University*, 928 F.3d 652, 656 (7th Cir. 2019), the plaintiff was alleged to have engaged in sexual misconduct against a female student. The plaintiff received notice of the allegations and denied them. *Id.* at 663. However, Purdue University did not disclose its evidence to the plaintiff. *Id.* Based upon this, the Seventh Circuit reasoned as follows:

> John's circumstances entitled him to relatively formal procedures: he was suspended by a university rather than a high school, for sexual violence rather than academic failure, and for an academic year rather than a few days. Yet Purdue's process fell short of what even a high school must provide to a student facing a days-long suspension. "[D]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581, 95 S.Ct. 729. John received notice of Jane's allegations and denied them, but Purdue did not disclose its evidence to John. *And withholding the evidence on which it relied in adjudicating his guilt was itself sufficient to render the process fundamentally unfair*.

*Doe*, 928 F.3d at 663 (emphasis added).

In this case, the Defendants prohibited the Plaintiff from accessing the physical evidence that Defendants Wright and Rooze collected. For example, the Plaintiff was prohibited from accessing the audio recordings of the interviews conducted by Defendants Wright and Rooze. *See* Am. Compl. ¶ 87, ECF No. 23. The Plaintiff was also denied access to security camera footage which would have undermined the testimony of Jane Roe. *Id.* ¶ 86. Critically, the Plaintiff was also prohibited from reviewing the Concealed Report that was submitted to the Panel. *Id.* ¶¶ 90, 97. The Panel relied upon the Concealed Report when finding that the Plaintiff violated university policy. *Id.* ¶ 91. Because the Defendants withheld evidence they used to find the Plaintiff guilty of violating university policy, the disciplinary process was fundamentally unfair.[5] *See Doe*, 928 F.3d at 663. Accordingly, the Plaintiff has stated a claim for a procedural due process violation.

## C.       Failure to Exhaust State Law Remedies

The Defendants argue that "[a]ny claim that John Doe was not provided the process due to him in this context is properly brought as a breach of contract claim." Defs.' Br. in Supp. of Renewed Mot. to Dismiss, p. 16, ECF No. 30. As such, the Defendants argue that "[b]ecause the First Amended Complaint does not allege exhaustion of contractual processes available to John Doe, he fails to state a claim for denial of due process." *Id.* at 17. The Court rejects this argument.

In *Hudson v. Palmer*, 468 U.S. 517, 519–20 (1984), a prisoner brought a pro se action pursuant to 42 U.S.C. § 1983 for the alleged destruction of his personal property within his

---

[5] Because the Plaintiff has alleged procedural deficiencies sufficient to survive a motion to dismiss, the Court need not address whether he had a constitutional right to cross-examine the other witnesses. *See Doe*, 928 F.3d at 664 n.4 (declining to address whether students at public universities have a constitutional right to cross-examine witnesses during disciplinary proceedings); *see also* William J. Migler, Note, *An Accused Student's Right to Cross-Examination in University Sexual Assault Adjudicatory Proceedings*, 20 Chap. L. Rev. 357, 379–381 (2017) (describing the split of authority over whether there is a constitutional right to cross-examination in a university disciplinary proceeding).

prison cell. The district court dismissed the action because, even if the prison guard intentionally destroyed the property, the action did not violate the Fourteenth Amendment because there were tort remedies available to redress the deprivation under state law. *Id.* at 520. On appeal, the Supreme Court reasoned that the prisoner had an adequate post-deprivation remedy in the form of state-law tort claims. *Id.* at 535–36. As such, the Court concluded that even if the prison guard "intentionally destroyed [the prisoner's] personal property during the challenged shakedown search, the destruction did not violate the Fourteenth Amendment since the Commonwealth of Virginia has provided [the prisoner] an adequate postdeprivation remedy." *Id.* at 536 (relying upon *Parratt v. Taylor*, 451 U.S. 527 (1981)).

In *Chang v. Purdue University*, 985 N.E.2d 35, 40–42 (Ind. Ct. App. 2013), a student was dismissed from a nursing program for various academic and unprofessional conduct. The student appealed her dismissal to university administrators and argued that her expulsion was caused by "improper Procedures and a lack of Due Process . . . ." *Id.* at 42–43. Her appeal to university administrators was denied. *Id.* at 43–44. Thereafter, the student filed a lawsuit bringing claims for (1) violating her Fourteenth Amendment right to due process under 42 U.S.C. § 1983; (2) violating her right to due process under the Indiana Constitution; and (3) various state-law breach of contract claims. *Id.* at 44. The state trial court dismissed the student's § 1983 claim. *Id.* On appeal, the Indiana Court of Appeals concluded that, assuming the student had a protected property right in her continued education, her breach of contract claim was a meaningful post-deprivation remedy. *Id.* at 49–50 (citing *Hudson*, 468 U.S. at 533). As such, the Indiana Court of Appeals concluded that the student was not entitled to pursue a claim under § 1983. *Id.*

However, the rationale of *Chang* conflicts with Seventh Circuit precedent. Namely, in *John Doe v. Purdue University*, 928 F.3d 652, 656 (7th Cir. 2019), the expelled student brought a

due process claim pursuant to 42 U.S.C. § 1983. On appeal, the Seventh Circuit concluded that the student pleaded facts sufficient to state a claim under the Due Process Clause of the Fourteenth Amendment. *Id.* at 670. The Seventh Circuit did not conclude, for example, that the student was required to repackage his claims under a state law breach of contract theory. Further, the court did not conclude that the student had a meaningful post-deprivation remedy in the form of a state law breach of contract claim. This Court is bound by the decisions of the Seventh Circuit rather than the Indiana Court of Appeals. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). Thus, because *Chang* conflicts with *Doe*, the Court cannot extend *Chang* to the facts of this case.

Furthermore, the Court disagrees with the logic of *Chang*. A state law remedy is inadequate when it "can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008) (quoting *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990)). Under Indiana law, "the relationship between a student and an educational institution is contractual in nature. The terms of the contract, however, are rarely delineated, nor do the courts apply contract law rigidly." *Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) (quoting *Neel v. Ind. Univ. Bd. of Trs.*, 435 N.E.2d 607, 610 (Ind. Ct. App. 1982)). "University disciplinary determinations in most cases are premised upon the subjective professional judgment of trained educators, and therefore our courts 'have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community.'" *Chang*, 985 N.E.2d at 46 (quoting *Neel*, 435 N.E.2d at 611). "Indeed, '[b]ecause such determinations rest in most cases upon the subjective professional judgment of trained educators, the courts have quite

properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community.'" *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013) (quoting *Neel*, 435 N.E.2d at 611). "Literal adherence by a university to its internal rules will not be required when the dismissal of a student 'rests upon expert judgments as to academic or professional standards and such judgments are fairly and nonarbitrarily arrived at.'" *Id.* (quoting *Neel*, 435 N.E.2d at 612). Based upon this deferential standard of review to university officials, the Court concludes that Indiana contract law does not provide a meaningful post-deprivation remedy. Therefore, the Court rejects the rationale of *Chang*, 985 N.E.2d at 49–50 (concluding that Indiana contract law provided a meaningful post-deprivation remedy).

Finally, *Hudson* and *Parratt* are not applicable in this case. The Seventh Circuit has reasoned that the logic of these cases only applies when state action is "random and unauthorized." *Armstrong v. Daily*, 786 F.3d 529, 543 (7th Cir. 2015). To qualify as random and unauthorized, the "misconduct must be misconduct of state officials that the State cannot foresee and that cannot be the subject of a meaningful pre-deprivation procedure." *Id.* Put differently, *Hudson* and *Parratt* are "limited to a narrow category of due process cases where the plaintiff claims he was denied a meaningful pre-deprivation hearing, but under circumstances where the very notion of a pre-deprivation hearing would be impractical and even nonsensical, and where the deprivation was not carried out through established state procedures." *Id.* at 539 (citing *Zinermon*, 494 U.S. at 128). In this case, it is undisputed that Purdue University established comprehensive rules and regulations that prohibited sexual misconduct. Purdue University also created university administrations dedicated to prosecuting allegations of sexual misconduct. Further, Purdue University created an administrative system to adjudicate claims of sexual misconduct. Thus, the actions of the Individual Defendants cannot be categorized as "random

21

and unauthorized" because their actions were predictable and carried out through established state procedures. Therefore, the Defendants' argument regarding the exhaustion of state-law remedies is denied.

## D.    The Equal Protection Claim

The Defendants argue that the Plaintiff fails to allege any violation of the Equal Protection Clause of the Fourteenth Amendment. The Court disagrees.

"The Equal Protection Clause of the Fourteenth Amendment states that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017) (quoting U.S. Const. amend. XIV, § 1). "In a protected-class equal protection analysis, a plaintiff must show that 'defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class.'" *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). The Supreme Court and the Seventh Circuit "have held that the equal protection clause contains a 'federal constitutional right to be free from gender discrimination' that does not 'serve important governmental objectives' and is not 'substantially related to those objectives.'" *Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986) (quoting *Davis v. Passman*, 442 U.S. 228, 234–35 (1979); citing *Huebschen v. Dep't of Health and Soc. Servs.*, 716 F.2d 1167, 1171 (7th Cir. 1983)). "As a general matter, a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes." *Id.* at 1186–87 (citing *Batson v. Kentucky*, 476 U.S. 79 (1986); *Vill. of Arlington Heights v. Metro. Hous. Corp.*, 429 U.S. 252, 266 n.14 (1977)). "It is well settled law that departures from established practices may evince discriminatory intent." *Nabozny*, 92 F.3d at 455 (citing *Vill. of Arlington Heights*, 429 U.S. at 267). Furthermore, "selective inaction

22

can be strong evidence of discriminatory intent." *Locke v. Haessig*, 788 F.3d 662, 671 (7th Cir. 2015). Specifically, a defendant "could be liable for ignoring complaints from one identifiable group while acting on similar complaints from those of another group." *Id.* (citing *Nabozny*, 92 F.3d at 454–56; *Bohen*, 799 F.2d at 1190 (Posner, J., concurring)).

In *Nabozny*, 92 F.3d at 449, a male student was harassed and assaulted by his male classmates. The student requested that the defendants, who were various school officials, protect him. *Id.* Despite having a policy of investigating and punishing battery and sexual harassment, the defendants refused to assist the student. *Id.* at 449, 454. However, the defendants aggressively punished battery and harassment that was perpetrated by male students against female students. *Id.* at 455. Following years of hardship, the student filed a lawsuit in which he alleged that his right to equal protection was violated. *Id.* at 449. At summary judgment, the district court dismissed the claim. *Id.* at 453. On appeal, the student argued that the defendants denied him the equal protection of the law on the basis of his gender. *Id.* The Seventh Circuit agreed and reasoned as follows:

> [T]he question becomes whether Nabozny can show that he received different treatment because of his gender. Nabozny's evidence regarding the defendants' punishment of male-on-female battery and harassment is not overwhelming. Nabozny contends that a male student that struck his girlfriend was immediately expelled, that males were reprimanded for striking girls, and that when pregnant girls were called "slut" or "whore," the school took action. Nabozny's evidence does not include specific facts, such as the names and dates of the individuals involved. Nabozny does allege, however, that when he was subjected to a mock rape Podlesny responded by saying "boys will be boys," apparently dismissing the incident because both the perpetrators and the victim were males. We find it impossible to believe that a female lodging a similar complaint would have received the same response.

> More important, the defendants do not deny that they aggressively punished male-on-female battery and harassment. The defendants argue that they investigated and punished all complaints of battery and harassment, regardless of the victim's gender. According to the defendants, contrary to the evidence presented by Nabozny, they aggressively pursued each of Nabozny's complaints and punished the alleged perpetrators whenever possible. Like Nabozny, the defendants presented evidence to support their

23

> claim. Whether to believe the defendants or Nabozny is, of course, a question of credibility for the fact-finder. In the context of considering the defendants' summary judgment motion, we must assume that Nabozny's version is the credible one. If Nabozny's evidence is considered credible, the record taken in conjunction with the defendants' admissions demonstrates that the defendants treated male and female victims differently.
>
> The defendants also argue that there is no evidence that they either intentionally discriminated against Nabozny, or were deliberately indifferent to his complaints. The defendants concede that they had a policy and practice of punishing perpetrators of battery and harassment. It is well settled law that departures from established practices may evince discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 564–65, 50 L.Ed.2d 450 (1977). Moreover, Nabozny introduced evidence to suggest that the defendants literally laughed at Nabozny's pleas for help. The defendants' argument, considered against Nabozny's evidence, is simply indefensible.

*Id.* at 454–55. Thus, as to the student's equal protection claim, the Seventh Circuit reversed the district court's grant of summary judgment. *Id.* at 460.

In *T.E. v. Grindle*, 599 F.3d 583, 585–86 (7th Cir. 2010), several female students complained about Robert Sperlik's inappropriate touching during class. The principal of the school, Karen Grindle, downplayed and covered up the misconduct. *Id.* at 586–87. Eventually, Sperlik was arrested when his abuse was uncovered. *Id.* at 585. Thereafter, several female students sued Sperlik and Grindle for violating their rights under the Equal Protection Clause of the Fourteenth Amendment. *Id.* Grindle argued that she was entitled to qualified immunity and moved for summary judgment, but her request was denied. *Id.* On appeal, the Seventh Circuit affirmed and reasoned as follows:

> [E]ven in light of *Iqbal*, plaintiffs have offered evidence sufficient to defeat summary judgment on Grindle's qualified immunity defense. Plaintiffs need not prove discriminatory intent in the same manner it was established in *Nabozny*, where male and female victims were treated differently. Plaintiffs have offered evidence that would let a jury easily conclude that Sperlik, acting under color of state law, denied the girls equal protection by molesting and abusing them. Plaintiffs have also offered evidence that would allow a jury to conclude that Grindle knew about Sperlik's abuse of the girls and deliberately helped cover it up by misleading the girls' parents, the superintendent, and other administrators. From this evidence, a jury could reasonably infer—though it would not be required to infer—that Grindle also had a purpose of discriminating against the girls

24

based on their gender. *Cf. Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1190–91 (7th Cir.1986) (Posner, J., concurring) (suggesting that policy of deliberately refusing to respond to complaints of sexual harassment would support an inference of intentional discrimination). If Grindle wishes to argue that she merely wanted to avoid a scandal or that she would have taken similar steps to conceal abuse if boys had been the victims, she can present those arguments to the jury, but such suggestions do not mean that she is entitled to judgment as a matter of law. She did report some of the complaints about Sperlik, but attempted to downplay those parts of the complaints that showed they were about sexual abuse rather than "pedagogical issues" or "teaching methods." From this evidence, a jury could conclude that by attempting to convert claims about sexual abuse by Sperlik into complaints about teaching methods, Grindle treated the girls' complaints differently because of their sex. Finally, we note that the Equal Protection Clause does not require that the state actor be motivated *solely* by the plaintiff's membership in a protected class. Even if Grindle was motivated in part by a desire to avoid disciplining teachers in general, she could still be held liable if she treated the plaintiffs' claims differently because they were made by girls targeted for sexual abuse.

*Grindle*, 599 F.3d at 588–89 (select internal citations omitted).

In this case, the Plaintiff alleges that the Defendants have "gender biased motivations" against male students. Am. Compl. ¶ 9, ECF No. 23. The Defendants would begin "University Initiated Complaints" against male students even if the alleged victim did not file a complaint. *Id.* ¶ 74. However, the Defendants would not initiate disciplinary proceedings against female students unless the alleged victim filed a formal complaint. *Id.* Further, similarly situated female students that were accused of sexual misconduct were either not charged with violating university policy or were penalized to a lesser degree than similarly situated male students. *Id.* ¶ 75. As noted above, "selective inaction can be strong evidence of discriminatory intent." *Locke*, 788 F.3d at 671. Furthermore, as in *John Doe v. Purdue University*, 928 F.3d 652, 668–70 (7th Cir. 2019), the Defendants were under immense pressure because of (1) various lawsuits filed by female students against Purdue University for its handling of allegations of sexual assault perpetrated by male students; (2) the negative media publicity regarding the lawsuits and the number of sexual assaults on campus; (3) various campus protests; and (4) the financial pressure caused by the Office of Civil Rights' investigations. *See* Am. Compl. ¶¶ 40–78, ECF No. 23.

Such pressure explains why the Defendants may have been motivated to discriminate against male students on the basis of gender. *Doe*, 928 F.3d at 669.

Furthermore, during the disciplinary proceedings, Defendant Sermersheim posed questions and made comments based upon sex-based stereotypes. Am. Compl. ¶ 104, ECF No. 23. Likewise, a panel member also made comments based upon sex-based stereotypes. *Id.* ¶ 107. Such gender-based stereotyping allows a reasonable inference that the "defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class.'" *Word*, 946 F.3d at 396 (quoting *Nabozny*, 92 F.3d at 453).[6]

When viewed in the light most favorable to the nonmoving party, the Plaintiff's allegations raise a plausible inference that he was discriminated against on the basis of sex. As such, the Plaintiff's equal protection claim survives the pleading stage.

**E.     The § 1983 Claims**

The Defendants argue that the Plaintiff's § 1983 claims must be dismissed because (1) neither Purdue University nor the Individual Defendants in their official capacity are "persons" within the meaning of § 1983 and (2) the Eleventh Amendment provides immunity to Purdue University and the Individual Defendants in their official capacity.[7] Defs.' Br. in Supp. of Renewed Mot. to Dismiss, pp. 20–21, ECF No. 30. In response, the Plaintiff concedes that his

---

[6] The Defendants do not argue that the Plaintiff failed to state an equal protection or due process claim against specific Defendants. Rather, the Defendants segregate their arguments based upon "Purdue University" and the "Individual Defendants." The Individual Defendants include Rollock, Sermersheim, Wright, and Rooze. Any argument that the Plaintiff failed to state a claim against *specific* Individual Defendants is therefore waived for purposes of the motion to dismiss. *See United States v. Vargas-Garnica*, 332 F.3d 471, 473 n.1 (7th Cir. 2003). Also, to avoid any confusion, the Court notes that the Plaintiff does not allege that Purdue University's policies draw any explicit distinction on the basis of sex. Further, the Defendants do not argue that their actions satisfy intermediate scrutiny.

[7] The Defendants also argue that the Plaintiff's state law claims are barred by the Eleventh Amendment. However, this argument is without merit because the Plaintiff has not alleged any state law claims within his Amended Complaint [ECF No. 23].

26

§ 1983 claims do not seek financial damages against Purdue University or the Individual Defendants in their official capacity. *See* Pl.'s Mem. Contra to Defs.' Mot. to Dismiss, pp. 31–32, ECF No. 34. The Plaintiff also concedes that the Individual Defendants are entitled to qualified immunity in their personal capacity. *Id.* at 32. Instead, the Plaintiff states that his § 1983 claims only seek injunctive relief against Purdue University and the Individual Defendants in their official capacities. *Id.* at 28–29; *see also* Am. Compl., pp. 51, 64, ECF No. 23 (explicitly stating that Counts 1 and 3 only seek injunctive relief against the Individual Defendants in their official capacity and/or against Purdue University). This request for injunctive relief is permissible because the Plaintiff "can obtain injunctive relief against the university, since official-capacity suits against state officials that seek only injunctive relief are permitted by 42 U.S.C. § 1983, and not forbidden by the Eleventh Amendment." *Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Ex Parte Young*, 209 U.S. 123 (1908); *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 122 F.3d 443, 444 (7th Cir. 1997)); *see also Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir. 1987) (the student's claim for damages was barred by the Eleventh Amendment, but not her request for injunctive relief). To avoid any confusion, the Plaintiff's § 1983 claims are dismissed to the extent that they seek monetary damages. However, these claims remain as to the requested injunctive relief.

## CONCLUSION

For the reasons stated above, the Defendants' Renewed Motion to Dismiss [ECF No. 29] is GRANTED in part and DENIED in part. Counts 1 and 3 of the Amended Complaint [ECF No. 23] are DISMISSED to the extent that theses Counts seek monetary damages. However, Counts 1 and 3 of the Amended Complaint survive to the extent that they seek injunctive relief. In all

other respects, the Defendants' Renewed Motion to Dismiss [ECF No. 29] is DENIED. The

Defendant's Motion to Dismiss [ECF No. 20] is DENIED as moot.

SO ORDERED on June 1, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT